FILED

2022 Mar-28  AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR

## THE NORTHERN DISTRICT OF ALABAMA   2022 MAR 25 �UNCLEAR⏑ 4: 33

## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES, WILLIE LEE JACKSON, JR. and JULIA TOLBERT-JACKSON, husband and wife, individually, as guardian and next friend to WTJ and SR, minor children, collectively, *and on behalf of other minor children and on behalf of all others similarly situated*, | Civil Action No.: <br> 2:22-CV-388-ACA <br> **CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> [formerly Circuit Court for Jefferson County, Alabama – Case No. 01-CV-2017-903269] |
| Plaintiffs, <br><br> v. <br><br> NATIONAL COUNCIL OF YOUNG MEN'S CHRISTIAN ASSOCIATIONS OF THE UNITED STATES OF AMERICA CORPORATION, et al. and NATIONAL COUNCIL OF YOUNG MEN'S CHRISTIAN ASSOCIATIONS OF THE UNITED STATES OF AMERICA, et al., d/b/a YMCA OF THE USA d/b/a YMCA OF BIRMINGHAM, et al. and KEVIN WASHINGTON and LUIS LOZADA, Esq. and WORLD ALLIANCE OF YMCAs, et al., FAIRFAX FINANCIAL HOLDINGS LIMITED, et al. d/b/a CRUM & FORSTER HOLDINGS CORP, et al. d/b/a THE UNITED STATES FIRE INS. CO., et al., and THE REDWOODS GROUP–A CRUM & FORSTER COMPANY, et al. and BETH COOPER and R. SCOTT BRICKER, JD and KEVIN A. TRAPANI, JD and GREG PONTES, INTEGRATED CLAIMS SOLUTIONS, et al. and ROSEMARY CUBBEDGE and GREG PONTES, AETNA, INC., | Violation of: <br> The United States Constitution <br> Amendment I        Amendment III <br> Amendment IV      Amendment V <br> Amendment VII     Amendment VIII <br> Amendment IX      Amendment X <br> Amendment XIII    Amendment XIV <br> **The Bill of Rights** <br> Violation of Contract <br> Violation of Duty of Care <br> Violation of Federal and State Laws <br> The Civil Rights Acts of 1866 <br> The Civil Rights Acts of 1964 <br> 5 U.S.C. § 552 <br> 15 U.S.C § 1058 <br> 15 U.S.C § 1059 <br> 18 U.S.C. § 47 <br> 18 U.S. Code § 241 <br> 18 U.S.C. § 242 |

| | |
|---|---|
| et al. and AETNA HEALTH, INC., A NJ CORP., et al. d/b/a AETNA HEALTH LaQUINTA ERISA SELF-FUNDED INS. HEALTHCARE PLAN, et al. and AETNA HEALTHCARE INS. CO. and AETNA LIFE INS. CO. and THE RAWLINGS COMPANY, et al. and SHANNON HEITZMAN and VICTORIA PEEK and ALEX GRAM and ADRIENNE W. KIM, Esq., JHTNA owners PATRICK ELLIS and LARRY NELSON, JHTNA (JOHNSON HEALTH TECH NORTH AMERICA) CORP. d/b/a JHTNA MANUFACTURING LLC and MATRIX FITNESS USA and NORTHLAND INDUSTRIES INCORP. and MAGNUM FITNESS SYSTEM, JOHN DOES 1 TO 95 and JANE DOES 1 TO 35 | 18 U.S.C. § 371<br>18 U.S.C. § 1001<br>18 U.S.C. §§ 1033 and 1034<br>18 U.S.C. § 1341<br>18 U.S.C. § 1343<br>18 U.S.C. § 1346<br>18 U.S.C. § 1512<br>18 U.S.C § 1622<br>18 U.S.C § 1961<br>26 U.S.C. § 401(a)(17)<br>28 U.S.C. §§ 1331 and 1332<br>28 U.S.C. § 1367<br>28 U.S.C. §§§§§§§§ 1441-1453<br>28 U.S.C. §§§§ 1711-1715<br>Northwest Ordinance of 1787<br>42 U.S.C. § 1983<br>42 U.S.C. § 1985<br>42 U.S.C. §§ 2651-2653 |
| Defendants, | |

## I.    COUNT 1
### Conspiracy
### Title 18, United States Code, Section 371

1.      At all times material to this Civil Complaint, Class Actions Complaint, Notice of Removal and Motion to Transfer.

## II.    CIVIL COMPLAINT

2.      COMES NOW, Plaintiffs, Willie Lee Jackson Jr. and Julia Jackson, as guardians to minors WJ and SR, and on behalf of other minor children and on behalf of all others similarly situated alleges that the whole injury of Plaintiffs, Willie Lee Jackson Jr., et al., were occasioned by the negligence, gross negligence, wantonness, intentional infliction of emotional distress,

intentional infliction of mental distress, intentional infliction of mental and emotional anguish and unskillfulness of the defendants in putting and falsely declaring the Magnum Fitness System adjustable incline weight bench was in manufacture's standard and quality in the fitness/weight room, whereby the plaintiffs, as well as the members and guest, and all other persons through whose body used the welded/repaired weight bench or other equipment, repaired by welding, altering, e.g., before it passed to members, administered as aforesaid, plaintiffs were induced to believe, and did believe that it was very safe to use for weight lifting/exercising, before the repaired/welded frame failed, "snapping" under Willie Lee Jackson, Jr., et al., plaintiffs," causing "multiple severe injuries, physical and mental disabilities, loss of quality of life, loss of future income earning potential, loss of physical capacity, loss of society, loss of tutor, loss of teacher, loss of guide, and loss of natural guardianship, and Plaintiffs hereby alleges as follows:

## III.   CLASS ACTION COMPLAINT

3.     Plaintiffs, Willie Lee Jackson Jr. and Julia Jackson, as guardians to minors WJ and SR, ("Jacksons"), on behalf of themself and on behalf of all others similarly situated, based upon personal knowledge as to themself and their own acts, and as to all other matters upon information and belief formed after an inquiry reasonable under the circumstances, for their Class Action Complaint against Defendants , the National Council of Young Men's Christian Association of the United States of America ("YMCA of USA") nonprofit corporation (foreign and domestic), the National Council of Young Men's Christian Association of the United States of America ("YMCA of USA") for profit corporation (foreign and domestic) both, et al. d/b/a YMCA of Birmingham, et al., Fairfax Holdings, et al., Crum & Forster Holdings, et al., the Redwoods Group – A Crum & Forster Company, et al., Integrated Claim Solutions, Inc., et al.,

3

Aetna, a N.J. Corp. and Aetna Inc. d/b/a Aetna Health ERISA Healthcare Plan, Aetna Life

Insurance Company and the Rawlings Company, et al., and the Plaintiffs' "Contract/s" does not

include any "Arbitration Clauses", and Plaintiffs' are not required resolve disputes through

arbitration process, and the Federal Arbitration Act does not apply to these Complaints, and all

YMCAs were insured by the Redwoods Group – A Crum & Forster Company, a subsidiary of

Crum & Forster Holdings, a subsidiary of Fairfax Financial for commercial liability contract for

incidents/accidents injuries, property, etc... ("Both YMCA of the USA, et al. d/b/a YMCA of

Birmingham, et al.", "Fairfax Holdings LTD, et al." d/b/a "Crum & Forster Holdings LTD, et

al.", et al. d/b/a "Redwoods Group – A Crum & Forster, et al.", et al., "Aetna Inc., et al." d/b/a

"Aetna ERISA Health Plan, et al." d/b/a Rawlings Company, et al.") (collectively, "Defendants")

hereby allege as follows:

4.      On, before or after December 2001, the Plaintiffs, et al. were in contracts (written

or verbal) with all Defendants, the National Council of Young Men's Christian Association of

the United States of America ("YMCA of USA") nonprofit corporation (foreign and domestic),

the National Council of Young Men's Christian Association of the United States of America

("YMCA of USA") for profit corporation (foreign and domestic) both, et al. d/b/a YMCA of

Birmingham, et al., Fairfax Holdings, et al., Crum & Forster Holdings, et al., the Redwoods

Group – A Crum & Forster Company, et al., Integrated Claim Solutions, Inc., et al., Aetna, a N.J.

Corp. and Aetna Inc. d/b/a Aetna Health ERISA Healthcare Plan, Aetna Life Insurance

Company and the Rawlings Company, et al., and violations were committed individually and

collectively, knowingly and willfully in concert with other known defendants, and unknown

John Does, Jane Does defendants, a state/s, et al. actions by defendants in state of Alabama

4

Court, and the Federal Arbitration Act does not apply to these Complaints, and all YMCAs were insured by the Redwoods Group – A Crum & Forster Company, a subsidiary of Crum & Forster Holdings, a subsidiary of Fairfax Financial for violation of commercial liability contract for incidents/accidents injuries, property, and more possible torts and criminal actions, violation of fiduciary duty and Plaintiffs hereby alleges as follows:

5.      Between December 2000 and March 2022, the Plaintiffs' contracts with Defendants did not include any "Arbitration Clauses", and Plaintiffs' are not required to resolve disputes through arbitration process, and Defendants actions in "Bad Faith" over (5) five years show intent violate Plaintiffs rights, privileges and immunities, violate the rule of law, and violate the United States; and Plaintiffs alleges as follows the defendants' violations of the United States Constitution and Amendment I, Amendment III, Amendment IV, Amendment V, Amendment VII, Amendment VIII, Amendment IX, Amendment X, Amendment XIII, Amendment XIV, the Bill of Rights; and defendants' violations of the Civil Rights Acts of 1866 and Civil Rights Acts of 1964 and the Civil Rights Acts of 1968; and defendants' violations of federal statues 5 U.S.C. § 552, 15 U.S.C § 1058, 15 U.S.C § 1059, 18 U.S.C. § 47, 18 U.S. Code § 241, 18 U.S.C. § 242, 18 U.S.C. § 371, 18 U.S.C. § 1001, 18 U.S.C. §§ 1033 and 1034, 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1346, 18 U.S.C. § 1512, 18 U.S. Code § 1622, 18 U.S. Code § 1961, 28 U.S.C. §§ 1711-1715, 26 U.S.C. §§ 401(a)(17); Northwest Ordinance of 1787, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. §§ 2651-2653, and Plaintiffs hereby alleges as follows:

6.      Between January 1, 2001 and March 18, 2022, the defendants' actions were committed as multiple conspiracies to Defraud the United States, and violate federal statues

5

(laws), and inflict damages on plaintiffs by knowingly and intentionally violating plaintiffs' rights, privileges and immunities; violating plaintiffs' contracts, duties of care, breaching trusts, breaching fiduciary duties, violating state laws, committing violations of ARCP (Alabama Rules of Civil Procedure), Federal Statues, and Sate of Alabama laws in concert with States officials of Alabama, North Carolina, Florida, Illinois, and New York agents and actors (members of YMCA board of directors between 2000 to 2022, and Plaintiffs alleges as follows:

7.     Plaintiffs alleged the following causes of actions for Punitive Sanctions against all Defendants: malicious prosecution and false arrest (Municipal Court of Alabaster, Alabama), et al.; violations of 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 872 (extortion by officers or employees of the United States), 18 U.S.C. § 3 (accessory after the fact), 18 U.S.C. § 1341 (frauds and swindles through the mail), 18 U.S.C. § 1342 (using fictitious name and address through the mail), 18 U.S.C. § 1621 (perjury), and 18 U.S.C. § 1512 (obstruction of justice); violations of 28 U.S.C. § 454 (practice of law by justices and judges); violations of the Federal Rules of Civil Procedure 60(b) (relief from judgment or order for mistakes, inadvertence, excusable neglect, and newly discovered evidence, fraud), 26(e) (duty to supplement disclosures and responses in discovery), 9(b) (requiring specificity in pleadings for fraud, mistake, and condition of the mind), 16(f), 10(a), 12(b) (7) (failure to join a party needed for just adjudication), and 12(b) (2)-(6); violation of Uniform Commercial Code § 3.501 (presentment, notice of dishonor, and protest in commercial paper); violations of the United States Constitution's 4th Amendment (prohibiting unreasonable search and seizure), 5th Amendment (right to due process), 6th Amendment (right to a fair trial with assistance of counsel), 9th Amendment (recognizing rights not enumerated in

6

the Constitution), and 11th Amendment (federal courts cannot hear suits against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State); and Breach of the Foreign Sovereign Immunity Act of October 21, 1976.

8.     COMES NOW, Plaintiffs, Willie Lee Jackson Jr., Julia Jackson, and guardians to minors WJ and SR, and on behalf of other minor children and on behalf of all others similarly situated, alleges violations of the Unfair Claims Settlement Practices Act

9.     COMES NOW, Plaintiffs, Willie Lee Jackson Jr., Julia Jackson, and guardians to minors WJ and SR, and on behalf of other minor children and on behalf of all others similarly situated, alleges violations of the Insurance Act of 2015-Breach of Duty of Fair Presentation under the Insurance Act of 2015.

10.    COMES NOW, Plaintiffs the United States, Willie Lee Jackson Jr. ("Willie Jackson"), Julia Jackson, minors WTJ and SR, and on behalf of other minor children and on behalf of all others similarly situated, and  co-plaintiffs (collectively, the "Plaintiffs"), and under Federal Rules of Civil Procedure Rule 23 (a)(1 - 4)(b)(1-5) Class Action based upon Willie Lee Jackson Jr.'s personal knowledge as to himself, his family (wife and minors) as next friend/guardian, and the potential class members constitutionally protected form of property (complaint) rights.

11.    Plaintiffs allege under the Articles of Confederation of 1787, the "Northwest Ordinance was enacted by the Continental Congress, printed in the United States Code, supra note 2, at LV-LVII, and further passing of the Constitution, and the Declaration of Independence made the four Organic Laws of the United States of America, and the "Northwest Ordinance

7

1787, "Organic Law", is law that is the crucial source that defines the fundamental liberties of American citizens."

      12.     Plaintiffs allege under the organic law that is invested in the "Northwest Ordinance of 1787 "enumerates rights" that no state shall abridge. Plaintiffs also assert that certain constitutionally protected forms of property and rights qualify for protection under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and they give substance to the terms "privileges" and "immunities" under the Northwest Ordinance, and not repugnant to principles of liberty in the Northwest Ordinance. Certain states, ex. Alabama, Georgia, Mississippi, Louisiana, South Carolina, e.g., once statehood was acquired were allowed (free) to change their constitutions and violate the fundamental "civil" rights enumerated in the Ordinance, which continues in the 21st century. The Northwest Ordinance of 1787 is the "organic law" for the federal government that protects citizens' rights, privileges and immunities of property (Complaint) rights in federal and state courts.

      13.     The Plaintiffs' are making allegations against the Defendants' unconstitutional acts as to all other matters upon information and belief formed after accidents, incidents, injuries, state of Alabama Court Hearings, and an inquiry reasonable under the circumstances for laws under the United States Constitution, and the Plaintiffs' and their Class Action members' Complaints alleges against Defendants the National Council of Young Men's Christian Associations of the United States of America, et al. d/b/a YMCA of the USA ("YMCA") non-profit corporation, et al., CEO/Pres. Kevin Washington, General Counsel Luis Lozada, Esq., and the National Council of Young Men's Christian Associations of the United States of America, et al. d/b/a YMCA of the USA ("YMCA") for-profit corporation, et al., both foreign and domestic,

8

d/b/a YMCA of Birmingham, et al. d/b/a YMCA of Birmingham Pelham Branch ("YMCA"), et

al. and the World Alliance OF YMCAs ("YMCA"), et al. (collectively referred to hereinafter as

"YMCA" or "the Y" or "Y" or "the YMCA") and YMCAs Presidents, Officers, Supervisors, and

Agents John Does 1 to 30 and Jane Does 1 to 8, and against Defendants Fairfax Financial

Holdings Limited ("Fairfax"), et al. d/b/a Crum & Forster Holdings Corporation, ("Crum &

Forster Corp"), et al. and the Redwoods Group-A Crum & Forster Company, ("Redwoods Group

– A Crum and Forster"), et al. and Crum & Forster Insurance Brokers, ("Crum & Forster

Insurance Brokers"), et al. and United States Fire Insurance Company, ("YMCA Insurer" or "Y

insurer"), et al., Beth Cooper, R. Scott Cooper, JD, Kevin Trapani, JD, Greg Pontes (collectively

referred to hereinafter as "Redwoods", "YMCA Insurer" or " Y Insurer" or "ymca insurer" or "y

insurer" or "YMCA Insurance Company"), and YMCAs insurers Presidents, Officers,

Supervisors, and Agents John Does 1 to 40 and Jane Does 1 to 10, and against Defendant

Integrated Claims Solutions and owner/President Rosemary Cubbedge, CPCU and insurance

claims adjuster Greg Pontes, against Defendants Aetna Incorporated, ("Aetna Inc"), et al. d/b/a

Aetna Health Incorporated ("Aetna Health Inc."), et al. and Aetna Health Insurance Company

("Aetna Health Ins Co"), et al. and Aetna Life Insurance Company ("Aetna Life"), et al.

d/b/a the Rawlings Company ("Rawlings"), et al., Shannon Heitzman and Victoria Peek and

Alex Peek and Alex Gram and Adrienne W. Kim, Esq., (collectively referred to hereinafter as

"Aetna", "Jacksons' Health Insurance Company" or "Jacksons' Insurance Company" or

"Jacksons' Insurer"), Jacksons' Health Insurance Companies Presidents, Officers, Supervisors,

and Agents John Does 1 to 15 and Jane Does 1 to 10, and against Defendants JHTNA owners

Patrick Ellis and Larry Nelson, JHTNA (Johnson Health Tech North America) Corp., et al. d/b/.

9

JHTNA Manufacturing LLC and Matrix Fitness USA, and Northland Industries Incorporated and Magnum Fitness System, et al. (collectively referred to hereinafter as "JHTNA"), JHTNA Presidents, Officers, Supervisors, and Agents John Does 1 to 10 and Jane Does 1 to 7 (collectively the "Defendants"). Plaintiffs make the following allegations pursuant to the Defendants' acts, and the investigation of their co-Plaintiff Willie Lee Jackson Jr. (Pro Se). Based upon information and belief, except as to allegations specifically pertaining to themselves, which involve co-plaintiff, Willie Lee Jackson Jr.'s personal knowledge and Affidavit, and knowledge of the potential class members admit, accept, and acknowledge as true the following facts and hereby allege as follows:

## IV.    Notice of Removal and Transfer to the UNITED STATES DISTRICT COURT FOR THE NORTHEN DISTRICT OF ALABAMA SOUTHERN DIVISION

14.    Theft by conversion when the Plaintiff, Willie Lee Jackson Jr., et al., complaint was served on September 1, 2017 to YMCA of Birmingham, 2610 Pelham Parkway, Pelham, AL. 35214, this is the incorrect address.

15.    The district court has jurisdiction of this case, because I reside in the jurisdiction of that court.

16.    The district court has jurisdiction of this case, because the events in this case happened in the jurisdiction of that court.

17.    This action is removed pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction over all federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

18.     By the filing of this Notice with the Clerk of this state Court, together with the attached and corresponding petition and warrant for removal that was filed in the United States District Court prior, these state proceedings are now REMOVED, by automatic operation of federal law, and this Defendant now formally notifies the Court and all parties of that same fact.

19.     By the filing of this Notice with the Clerk of this state Court, together with the attached and corresponding petition and warrant for removal that was filed in the United States District Court prior, these state proceedings are now REMOVED, by automatic operation of federal law, and this Defendant now formally notifies the Court and all parties of that same fact.

20.     Pursuant to the express and specific language of 28 U.S.C. 1441, et seq., immediately upon the filing of this Notice, with the Clerk of this Court, this case has been already removed; The removal of jurisdiction from this Court is automatic by operation of federal law and does not require any additional written order from the District Judge to cause this removal to become "effective" – the removal is an automatic judicial event, and immediate by operation of law.

21.     Put another way, the United States Supreme Court clarified and established, clear back in 1966: "The petition is now filed in the first instance in the federal court. After notice is given to all adverse parties and a copy of the petition is filed with the state court, removal is effected and state court proceedings cease unless the case is remanded. 28 U. S. C. § 1446 (1964 ed.). See generally, American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Tentative Draft No. 4, p. 153 et seq. (April 25, 1966)." Georgia v. Rachel, 384 U.S. 780, 809 n27, 86 S. Ct. 1783, 16 L. Ed. 2d 925 (1966). (emphasis added).

22.     Because this cause is now removed, the instant Court is without jurisdiction to effect any judgment in these proceedings (28 U.S.C. § 1446(c)(3)).

11

## V.   **SUPPLEMENTAL JURISDICTION 28 U.S.C. § 1367**

23.     The federal court has jurisdiction over all acts under federal statue 28 U.S.C. § 1367, Supplemental Jurisdiction in any civil action of which District Court have original jurisdiction all part of the case or controversy under Article III of the United States Constitution. Plaintiffs move for relief and make claims under federal laws.

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as Defendants s under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

24.     In 2005, Congress passed the Class Action Fairness Act under federal statues 28 U.S.C §§§ 1332 and 1711 and 1715, removal to federal court, when the diversity and number of potential class members are too large to list in the complaint.

12

25. The Judicial Department of every government is the rightful expositor of its laws, and emphatically of its supreme law. The defendants in state court action, "Plaintiffs Final Amended Complaint", were the Jacksons, et al., plaintiffs v. YMCA of the USA d/b/a YMCA of Birmingham, World Alliance of YMCAs, and the Redwoods Group – A Crum & Forster Company, defendants, 01-CV-903269.00 – in the Jefferson County, Alabama Circuit Civil Court. Plaintiffs are citizens from the state of Alabama, and Defendants YMCA of the USA are citizens from the state of Illinois, World Alliance of YMCAs are citizens from the country of Switzerland, and the Redwoods Group – A Crum & Forster Company are citizens from the state of North Carolina. The amount in

26. Federal courts are courts of limited jurisdiction (limited power). Under 28 U.S.C §§ 1331 and 1332 federal courts may hear cases in which a citizen of one State or nation and the amount at stake is more than $75,000.00. In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff. Explain how these jurisdictional requirements have been met.

27. This action is brought pursuant to 42 U.S.C. § 1983 and the First, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Thirteenth and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction over all federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

28. If the court finds it does not have jurisdiction over Defendants YMCA of the USA, YMCAs' insurers, Fairfax, Redwoods, Aetna, or JHTNA that venue is improper, Plaintiff moves in the alternative for transfer pursuant to 28 U.S.C. § 1406(a).

13

29.     Venue is proper in the Northern District of Alabama Southern Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and, additionally, because many Plaintiffs reside in this District.

30.     Defendants, by way of their former counsel in state court in concert with Plaintiffs previous counsel and they added Patrick Ellis and Glenn E. Ireland, Esq. as part of the case; plaintiff, Willie Jackson Jr. asked counsel to quite in early March, immediately, due to uncomfortable relationship.

## VI.     **FEDERAL QUESTIONS JURISDICTION**

31.     This Court has jurisdiction over the subject matter of this civil action pursuant to Civil Rights Act of 1866, 14 Stat. 27-30, guaranteed the rights of all citizens to make and enforce contracts, same right that a white citizen has to make and enforce contracts, sue and be sued, give evidence in court, and inherit, purchase, lease, sell, hold, and convey real and personal property. The U.S. Supreme Court ruling in part upon federal statue 42 U.S.C § 1982, which provides "that all citizens shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property", *See "Joseph Lee Jones v. Alfred H. Mayer Co., No. 645 (1968), 392 U.S. 409"* states, "that all citizens shall have the same right, in every State and Territory, to purchase, hold and convey real and personal property," (citation omitted).

32.     This action is brought pursuant to 42 U.S.C. § 1983, updated on February 2022, H.R.7085 - Ending Qualified Immunity Act of the 116th Congress (2019-2020), United States Congress passed, and new law states, "Every person who, under color of any statute, ordinance,

14

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

33.     This action is brought pursuant to the First, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Thirteenth and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction over all federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

34.     This action is brought pursuant to the YMCA of the USA being the "nerve center" for transfer, movement, dismissal, records keeping, e.g., of all YMCAs (domestic and foreign, for-profit and non-profit), *See Hertz Corp. v. Friend, 559 U.S. 77, 80– 81 (2010)* states, "The phrase "principal place of business" in §1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.,* its "nerve center," which will typically be found at its corporate headquarters."

15

35.     Plaintiffs alleges records and documents, over years, by researching at Birmingham Public Library, and hiring a Forensic Accounting agency research material and locate documents in different courts, registered under the United States Patent Office and Trademark, e.g.....

## LANHAM ACT - TRADEMARK ACT of 1946

36.     The "YMCA", National Council of Young Men's Christian Associations of the United States of America d/b/a the "YMCA of the USA", 101 N Wacker Dr., Suite 1600 Chicago, IL, 60606 is the registered owner of Patent No. 659,629 (March 18, 1958), 668,795 (October 21, 1958), 780,752 (November 24, 1964), 964,457 (July 17, 1973), 964,458 (July 17, 1973), 889,198 (April 7, 1970) registered with the United States Patent and Trademark Office.

37.     The Young Men's Christian Association ("YMCA") has not always been a 501 (C) 3 Nonprofit Corporation documents were requested in State of Alabama Court but Defendants did not comply with the Law or receive Sanctions, and Motion of Compel was filled by Plaintiffs against Defendants and Defendants' responses violated multiple states laws (Alabama, Florida, Illinois, Kentucky, New Jersey, New York, and North Carolina) and federal laws in submissions of documents from the National Council of Young Men's Christian Associations of the United States or America d/b/a YMCA of the USA d/b/a YMCA of Birmingham d/b/a Pelham Branch of the YMCA of Birmingham, the Redwoods Group – A Crum & Forster Company did not respond to the state Complaint, Aetna Health ERISA Health Plan, and received no Punitive Sanctions, Each Defendant, individually should receive Court Punitive Sanctions and Injunctive Order to respond to Discovery within twenty (20), less time, instead of Court Ordered Mediation.

16

38.     YMCA of the USA applications for IRS 501 (C) 3 Nonprofit Corporation status for the National Council of National Young Men's Christian Associations of the United States of America ("YMCA of the USA") d/b/a the YMCA of Birmingham and other YMCAs.

39.     The National Council of Young Men's Christian Associations of the United States of America Corporation's address: 155 Office Plaza Drive Suite A Tallahassee, Florida 32301, is a foreign nonprofit, company number: F97000001698, incorporation date: April 3, 1997, branch of Illinois company.

40.     The National Council of Young Men's Christian Associations of the United States of America Corporation is trademark owner of Serial numbers 76309048, 76553147, 76553148, 76553148, 76591331, 76592486, 76593026, 76599025, 76599353, 77009895, 77781946, 77781950, 77781953, 77781959, 77781960, 77781965, 77781968, 77781969, 77781970, 77781971, 77781974, 77781975, 77781978, 77781979, 77781983, 77781996, 77781997, 85140629, 85144056, 85154065, 85154070, 85154081, 85155211, 85218262, 85287686, 85519294, 85599577, 85915166, 85915170, 85915174, 85915179(Charity), 85915183, 85915187, 85915191, 85915191, and 85915194.

41.     Public records list the foreign nonprofit National Council of Young Men's Christian Associations of the United States of America Corporation's Federal EIN/TIN numbers (Tax ID) 363258696 and 363258696 with head address and mailing address as 101 N. Wacker Drive Suite 1600, Chicago, Illinois 60606.

42.     The "YMCA", National Board of Young Men's Christian Associations and/or National Council of Young Men's Christian Associations of the United States of America d/b/a the "YMCA of the USA" have filed "Complaints" in United States District Courts for

17

"Trademark and Trade Name Infringement", "Unfair Competition" against Municipalities, franchisees, assignors, etc. for using the name "YMCA", "Y", or other trademarks.

43.     The "YMCA", National Board of Young Men's Christian Associations and/or National Council of Young Men's Christian Associations of the United States of America d/b/a the "YMCA of the USA" have filed "Complaints" in United States District Courts under "Trademark Act of 1946", *See "IN The UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN NATIONAL BOARD OF YOUNG MEN'S CHRISTIAN ASSOCIATION, Plaintiff, vs. THE FLINT YOUNG MEN'S CHRISTIAN ASSOCIATION OF FLINT, MICHIGAN, Defendant, No. 82-40466, 633 F. Supp. 1 (E.D. Mich. 1985),"* Civil Action, where Plaintiff, National Board of Young Men's Christian Associations, for its complaint, "by and through its attorneys, alleges that: (1). ...its principal place of business is 101 N Wacker Drive, Chicago, Illinois. (3). Upon information and belief, defendant Flint YMCA has committed, is committing, and will continue to commit acts of trademark and trade name infringement and unfair competition as hereinafter more specifically alleged, in this district and elsewhere throughout the United States through the advertisement, offering, rendering and selling of services and goods under the names and marks Young Men's Christian Association, YMCA and the "Y" insignia. (6). ... "Exhibit A attached hereto is the corporate Charter of the plaintiff. The national organization of the Young Men's Christian Associations, currently known as the YMCA of the USA, comprises the National Council of Young Men's Christian Associations, currently known as the YMCA of the USA, comprises the National Council of Young Men's Christian Associations, the plaintiff NATIONAL BOARD OF YMCAs and the

18

local associations located throughout the United States of America. …"and the owner of the names and marks Young Men's Christian Association(s), YMCA and the "Y" insignia."

44.     In this tradename infringement action not yet tried, District Judge NEWBLATT declined to issue, prior to trial, a preliminary injunction ordering the defendant, the Flint Young Men's Christian Association, a local YMCA, to refrain from using YMCA trademarks and tradenames registered by plaintiff, National Board of Young Men's Christian Associations, under the Lanham Act, 15 U.S.C. §§ 1051-1127. Defendant has withdrawn from the national organization in a dispute over dues payments.

45.     The National Council of Young Men's Christian Associations of the United States of America Corporation's, (foreign nonprofit) address: 155 Office Plaza Drive Suite A Tallahassee, Florida 32301, Directors/Officers are Christopher Padilla (Many Domestic Profit Corporations & LLCs, etc. in multiple different states), David A. Barahona (Many For Profit Corporations, LLCs, Foreign Non Profit Corporations & Foreign Corporation etc. in many different states), Jed Bernstein (Many Foreign Non Profit Corporations, a Foreign Corporation, a Domestic Business Corporation, etc.), John Baird, the Chairman is Pamela Davies (a Canada Limited Partnership, Canada Non-Distributing Corporation with 50 or fewer Shareholders, Domestic Non Profit Corporations, Domestic LLCs, Domestic Profit Corporations, a Foreign Corporation, Domestic Corporations, a Foreign Profit Corporation Foreign LLCs, etc.) and agent Nancy Owens.

46.     The YMCAs, nationally and internationally, required to pay membership fees, profit share, and movement of YMCA agents CEOs/Presidents, COOs, CFOs, Executives, Ex. Directors, Directors, and Staff with the National Council of Young Men's Christian Associations

19

of the United States of America d/b/a the "YMCA of the USA, Corporations (Non-Profit and For-Profit, Domestic and Foreign, e.g.) d/b/a World Alliances of YMCAs and local YMCAs.

47.    The National Council of Young Men's Christian Associations of the United States of America Corporation's, a Montana Foreign Corporation, registered agent: Registered Agent Solutions, Inc., address: 302 N. Last Chance Gulch Suite 403, Helena, Montana 59601, mailing address 101 N. Wacker Drive Suite 1500, Chicago, Illinois 60606.

48.    The National Council of Young Men's Christian Associations of the United States of America d/b/a YMCA of the USA has a For Profit partner the National Council of Young Men's Christian Associations of the United States of America Corporation?

49.    Please explain the role YMCA of the USA as the lobbyist for all YMCAs (Young Men's Christian Associations (YMCAs) nationally and internationally?

50.    The "YMCA", National Board of Young Men's Christian Associations and/or National Council of Young Men's Christian Associations of the United States of America d/b/a "YMCA/YMCAs" or "YMCA of the "USA" and all national and/or international YMCAs are not religious organizations, religions, or sovereign agents of the United States of America or any other Country/Continent.

51.    The YMCA is a commercial business with charity components and receive large tax exemptions from different governments in America (all 50 states, Puerto Rico, etc. and other countries around the world.

52.    The "YMCA", National Board of Young Men's Christian Associations and/or National Council of Young Men's Christian Associations of the United States of America d/b/a "YMCA/YMCAs" or "YMCA of the "USA" and all national and/or international YMCAs have

20

been successfully sued in "State, Federal Courts and International Courts" for "Breach of Contract, "violation of Duty of Care", "Duty of Care", "Assaults (physical, sexual, molestation, failure to act, etc.") and other "Torts" in State, Federal, and International Courts.

53.     On August 7, 2017 at 11:03 PM, Official USPTO (United States Patent and Trademark Office) U.S. Serial Number: 75121867; U.S. Registration Number: 2092282; U. S. Registration Date: August 26, 1997; Mark: MAGNUM; Owner: JOHNSON HEALTH TECH CO., LTD, …. Section 8 of the Trademark Act, 15 U.S.C, § 1058; Section 9 of the Trademark Act, 15 U.S.C. § 1059; ASSET PURCHASE AGREEMENT dated July 30, 2012 TRADEMARK, REEL: 006056 FRAME: 0163 - TRADEMARK, REEL: 006056 FRAME: 0168, show **BUYER: JHTNA (Johnson Health Tech North America, Inc.) MANUFACTURING, LLC, Jason Lo, CEO, purchase** from **SELLER: NORTHLAND INDUSTRIES, INC. D/B/A MAGNUM FITNESS SYSTEMS, Patrick Ellis, Pres., Shareholders: Patrick Ellis and Larry Nelson**, selling ownership and trade name, patent, serial numbers, and other documents to JHTNA (Johnson Health Tech North America, Inc.) MANUFACTURING, LLC, showing ownership registration renewal by JHTNA (Johnson Health Tech North America, Inc.) MANUFACTURING, LLC filing REQUIREMENT FOR MAINTAINING REGISTRATION documents with the USPTO (United States Patent and Trademark Office) showing ownership of NORTHLAND INDUSTRIES, INC. D/B/A MAGNUM FITNESS SYSTEMS, purchased in 2012.

### The Employee Retirement Income Security Act of 1974

54.     Plaintiffs alleges Defendants violated federal laws under Employee Retirement statues for "Qualified Pension, Profit-Sharing, and Stock Bonus plans" under 26 U.S.C. § 401

states, "local YMCAs are independent organizations, when the YMCA Retirement Fund –

Savings for Life was incorporated in 1921 by a special act of the legislature of the state of New

York; in 1983, assets grew from $521 million to $3.6 billion and the number of participants grew

from 19,891 to 76,449; the fund merged the Savings and Security Plan into the Retirement Plan

in 1989."

55.     Whoever, in any document required by title I of the Employee Retirement Income

Security Act of 1974 (as amended from time to time) to be published, or kept as part of the

records of any employee welfare benefit plan or employee pension benefit plan, or certified to

the administrator of any such plan, makes any false statement or representation of fact, knowing

it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of

which is required by such title or is necessary to verify, explain, clarify or check for accuracy

and completeness any report required by such title to be published or any information required

by such title to be certified, shall be fined under this title, or imprisoned not more than five years,

or both. The Rawlings Company Alex Gram of Aetna Healthcare Self-Funded ERISA Plan

knowingly and willfully denied and/or stopped needed medical treatment that the YMCA insurer

refused to under liability insurance claim. All LaQuinta Employees Aetna Healthcare Self-

Funded ERISA Plan was required by contract to assess all medical charges for test, prescriptions,

MRIs, X-Rays, surgeries, doctor visits, rehabilitation, etc. to the Redwoods Group – A Crum &

Forster Company Fraud, driving cost up for employees of the ERISA plan. Gerald C. Brooks,

Esq., knowingly and willfully violated ERISA of 1974, possibly helped by Angela Allen, Rachel

Nichols of Serious Injury Law Group with Alex Gram; the Redwoods Group – A Crum &

Forster Company R. Scott Bricker, JD, Kevin Trapani, JD, Beth Cooper knowingly and willfully

violated ERISA of 1974 by Fraud with Alex Gram; Jason M. Beasley, Jeremy Mead, Stan Law, Melvin Lane Vines knowingly and willfully violated ERISA of 1974 by Fraud with insurer of all YMCAs, the Redwoods Group – A Crum & Forster Company; Wallace, Jordan, Ratliff & Brandt Law Firm, Roderick J. Evans, Esq., Thomas A. McKnight, Jr., Esq., James Britt Funderburk, Esq. knowingly and willfully violated ERISA of 1974 by Fraud with the Redwoods Group – A Crum & Forster Company and Gerald C. Brooks, Esq.; Balch & Bingham Law Firm, David R. Boyd, Esq., Joseph D. Leavens, Esq., collectively and individually, for knowingly and willfully violated federal statues, ERISA of 1974 by Fraud with the Redwoods Group – A Crum & Forster Company Fraud, the YMCA of the USA Fraud and the YMCA of Birmingham Fraud, and Gerald C. Brooks, Esq. of Serious Injury Law Group Fraud.

56.     Plaintiffs alleges paragraphs Municipal Court of Alabaster, Alabama, et al., collectively and individually, for knowingly and willfully violated federal statues, ERISA of 1974 by Fraud with the Redwoods Group – A Crum & Forster Company Fraud, the YMCA of the USA Fraud and the YMCA of Birmingham Fraud, and Gerald C. Brooks, Esq. of Serious Injury Law Group Fraud.

57.     Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required

23

by such title to be certified, shall be fined under this title, or imprisoned not more than five years, or both.

58.     Violation of federal crime of insurance fraud 18 U.S.C. § 1033 by the Rawlings Company Alex Gram of Aetna Healthcare Self-Funded ERISA Plan knowingly and willfully denied and/or stopped needed medical treatment that the YMCA insurer refused to under liability insurance claim. All LaQuinta Employees Aetna Healthcare Self-Funded ERISA Plan was required by contract to assess all medical charges for test, prescriptions, MRIs, X-Rays, surgeries, doctor visits, rehabilitation, etc. to the Redwoods Group – A Crum & Forster Company Fraud, driving cost up for employees of the ERISA plan. Gerald C. Brooks, Esq., knowingly and willfully violated ERISA of 1974, possibly helped by Angela Allen, Rachel Nichols of Serious Injury Law Group with Alex Gram; violation of federal crime of insurance fraud 18 U.S.C. § 1033 and honest service fraud 18 U.S.C. § 1346 by the Redwoods Group – A Crum & Forster Company R. Scott Bricker, JD, Kevin Trapani, JD, Beth Cooper knowingly and willfully violated ERISA of 1974 by mail fraud, wire fraud, honest service fraud, insurance fraud in concert with all Defendants and Defendants agents Alex Gram, Jason M. Beasley, Jeremy Mead, Stan Law, Melvin Lane Vines, Kristine Williams, Erwin Brown (Smith) knowingly and willfully violated ERISA of 1974 by Fraud concert with insurer of all YMCAs and YMCAs insurer the Redwoods Group – A Crum & Forster Company and counsel Wallace – Jordan - Ratliff & Brandt Law Firm, et al., Roderick J. Evans, Esq., Thomas A. McKnight, Jr., Esq., James Britt Funderburk, Esq., and other agents knowingly and willfully violated ERISA of 1974 by Fraud with the Redwoods Group – A Crum & Forster Company and Gerald C. Brooks, Esq.; Balch & Bingham Law Firm, David R. Boyd, Esq., Joseph D. Leavens, Esq. knowingly and

24

willfully violated ERISA of 1974 by Fraud with the Redwoods Group – A Crum & Forster Company Fraud, the YMCA of the USA Fraud and the YMCA of Birmingham Fraud, and Gerald C. Brooks, Esq. of Serious Injury Law Group Fraud…….

59.     On or before August 7, 1904 to March 2022, Plaintiffs' alleges that "rights are moral  and legal" in this is a civil rights action, and challenging all Defendants and the state of Alabama constitution, statues, laws, policy, custom and practice of obstructing justice, violating civil rights of plaintiffs; and violation the Northwest Ordinance of 1787 citizen's rights, privileges and immunities, violating the First Amendment of United States Constitution of 1789, by state of Alabama abridging citizens' rights "to petition the Government for a redress to grievances" to property (complaints) rights, "property ("Complaints") rights", and violate Fifth Amendment rights – "no  person shall be deprived of life, liberty or property ("complaint") without "due process" of law, and nor shall private property ("Complaint") be taken for public use, without just compensation; and violation of the Seventh Amendment "in Suits at common law, where the value in controversy exceed twenty dollars, the right to trial by jury shall be preserved"; and violation of Nineth Amendment "Enumerated Rights and Fundamental Rights", violation of the Tenth Amendment "rights reserved by the people ", and violation of the Thirteenth Amendment "involuntary servitude is illegal"; First Amendment rights of life, liberty, and property and state illegally abridging "right to contract and retaliating against plaintiffs and other class members of the complaints for exercising their Amendment rights.

60.     Plaintiffs alleges states violation of their constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the "supreme rights" under the United States Constitution and the Northwest Ordinance of 1787 are

"enumerated rights", privileges and immunities were violated by Defendants', Defendants' counsels, Plaintiffs' counsel, Defendants' agents, and against state abridgement of Plaintiffs' Civil Rights, and First Amendment Right to file legal Complaint for grievance, and any other acts by defendants discovered during discovery identifying Defendants' violation of Plaintiffs' Civil Rights.

61.     Plaintiffs, et al. seeks leave of the Court to Amend Complaint to include the State of Alabama and  State of Alabama's agents as Defendants that violated the "organic law", per United States Code, which consists of the Constitution, the Declaration of Independence, the Articles of Confederation, and the Northwest Ordinance, because the violation of the "organic law", and conflict violations by State of Alabama agents possibly knowingly and willfully communicated or worked in concert with any State of Alabama agent or entity to take property, to deny citizens' CARES ACT  funds in violation of the "Spending Clause" of the United States Constitution that is fundamental to Plaintiffs (citizens). If State of Alabama agents had contact with any person or entity about lawsuit between any Alabama agent and any YMCA entity, YMCA agent, YMCA insurer, YMCA insurer entity or YMCA insurer agent between May 31, 2016 to March 9, 2022.

62.     Plaintiffs' rights, privileges and immunities under the Northwest Ordinance of 1787 and Article I, Section 10 of the Constitution limits the power of the states; indeed, before the Fourteenth Amendment, these two organic law sources contained the only federal provisions that enumerated and protected the civil rights of citizens against state authorities, the Northwest Ordinance 1787 was designed to protect citizens against state abridgement of citizen's "Supreme Rights" and federal authority.

26

63.     The First, Third, Fourth, Fifth, Seventh, Eighth, Nineth, Tenth, Thirteenth and
Fourteenth Amendments under the U.S. Constitution rights; rights, privileges and immunities
under the Northwest Ordinance of 1787, include the Civil fundamental rights to file a complaint,
receive records from the state court, and receive records from Plaintiffs' counsel. Congress shall
make no law abridging the freedom to petition the Government for a redress of grievances.
Alabama citizens' ("Plaintiffs") have fundamental property rights to  make petitions within the
state of Alabama with officers of Alabama engaged in their official duties (Judges, Clerks, e.g.)
in public places (Jefferson County, Alabama Circuit Civil Court, Shelby County, Alabama
Circuit Court, and Shelby County, Alabama District Court, and Alabaster, Alabama Municipal
Court) are not only essential to tort law and criminal law, it also critically serves the public's
right to receive due process, when government is functioning under law. "Product mislabeled
case law; ", See *Thomas v. Winchester* (6 N. Y. 397), 1852, WL 4748, (citation omitted).

64.     State of Alabama, Jefferson County, Alabama Circuit Civil Court became an
improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively,
when federal and state law were disregarded under First Amendment rights. If the court finds it
does not have jurisdiction over Plaintiffs and Defendants or that venue is improper, Plaintiff
moves in the alternative for transfer pursuant to 28 U.S.C. § 1406(a), *See Gober v. City of*
*Birmingham, 373 U.S. 374, 83 S.Ct. 1311*, (citation omitted).

65.     Under Article III, Section 2 of the U.S. Constitution states, "The judicial Power
shall extend to all Cases in Law and Equity, arising under this Constitution, the Laws of the
United States, and Treaties made, or shall be made, under their Authority; to Controversies
between Citizens of different States, over state law and rulings.

27

## VII.   DIVERSITY JURISDICTION AND VENUE 28 U.S.C § 1331 and 1332

66.     The federal court has jurisdiction over all acts under federal statue 28 U.S.C. §
1332 involving the diversity of citizenship and amount in controversy. The United States District
Court for the Northern District of Alabama shall have original jurisdiction of all civil actions
where the matter in controversy exceeds the sum or value of $75,000 (Ex. 1), exclusive of
interest and costs, and is between citizens of different States, citizens of a State and citizens or
subjects of a foreign state, citizens of different States and in which citizens or subjects of a
foreign state are additional parties, and a foreign state, defined in section 1603, and federal statue
of this title as defendant and citizens of a State or of different States.

67.     A Plaintiff, by the name of Heather Reynolds, filled a Complaint in Jefferson
County, Alabama Circuit Civil Court the U.S. Court of Appeals for the First Circuit stating,
"Gathering information about government officials in a form that can readily be disseminated to
others serves a cardinal First Amendment interest in protecting and promoting 'the free
discussion of governmental affairs.'"[1]

### Class Action Fairness Act under 28 U.S.C. § 1367

68.     Plaintiffs alleges Conspiracies to violate Civil Rights of protected class members,
groups and citizens by the Defendants, the National Council of Young Men's Christian
Associations of the United States of America d/b/a YMCA of the USA non-profit domestic and
foreign corporation is a citizen of Illinois, the National Council of Young Men's Christian
Associations of the United States of America d/b/a YMCA of the USA for-profit corporation,

_____

foreign and domestic corporation is a citizen of Florida, collectively are located in most, if not all, U.S. cities and states with multiple locations with over approximately 1,000,000 incidents worldwide, when including the Redwoods Group – A Crum & Forster Company as legal insurer for all YMCAs, Jewish Community Centers, A. G. Gaston Boys & Girls Club, and other entities.

69.      Plaintiffs, under Federal Rules of Civil Procedure Rule 23 (a)(1 - 4)(b)(1-5) Class Action and Class Action Fairness Act under federal statues  28 U.S.C §§§ 1332 and 1711 and 1715, alleges Defendants' and Defendants' representatives or agents crimes and retaliating acts of mail fraud, wire fraud, honest service fraud violated federal statues  18 U.S.C. § 1346- Honest Service Fraud, 31 U.S.C. § 3729- False Claims Act, perjury, subornation of perjury, obstruction of justice, abuse of power, abuse of process, defrauded the United Sates, corruption in concert in violation of federal 18 U.S.C. § 371 (RICO) conspiracy laws to violate civil rights, conspiracy to commit insurance fraud, conspiracy to commit honest service fraud, conspiracy to commit mail and wire fraud, conspiracy to obstruct justice, conspiracy defraud the United States of America, violation of Sarbanes Oxley Act, violation of Dodd-Frank in concert, as organized organizations, *See  United States v. Scrushy, No. 12-10694 (11th Cir. 2013)*.

## Consumer Safety Act

70.      The Consumer Safety Act (CPSA- Consumer Product Safety Act) was enacted on October 27th, 1972, and Section 4 of the 1972 act established the United States Consumer Product Safety Commission (CPSC) as a permanent independent agency of the United States federal government and defined its basic authority, and the act gives CPSC the power to develop safety standards and pursue recalls for products that present unreasonable or substantial risks of injury or death to consumers.

71.     In 2014, Johnson Health Tech North America (JHTNA) "recalled" one thousand - one hundred (1,100) Magnum and Matrix 900 Pro Series multi-station strength training towers from commercial fitness facilities (ex. health clubs, hotels, apartments complexes, rehabilitation centers, schools and municipal facilities) for hazards on Friday, April 25, 2014, and reported equipment sold at Magnum Fitness and Johnson Health Tech North America, three incidents, one hundred and forty one to one hundred and sixty (141-160) recalled, importer as Northland Industries Inc. d/b/a Magnum Fitness Systems of Milwaukee and JHTNA Manufacturing LLC of Milwaukee, the manufacturer as Northland Industries Inc. d/b/a Magnum Fitness Systems of Milwaukee and JHTNA Manufacturing LLC of Milwaukee.

72.     Johnson Health Tech North America (JHTNA) Manufacturing LLC, notified local retailers, suppliers, buyers, etc. of the equipment recall, "date reported documents show April 25, 2014, Magnum and Matrix 900 Series multi-station training towers recall", was located at some YMCAs, and the YMCAs (foreign and domestic) assisted the Consumer Product Safety Commission with the "Recall", along with other businesses for public safety and public health. The Defendants knowingly and willfully misrepresented Patrick Ellis and/or representation contact in reference to June 18, 2016, injuring Willie Lee Jackson Jr. at the YMCA of the USA d/b/a YMCA of Birmingham d/b/a Pelham Branch of the YMCA of Birmingham.

## VIII.  NATURE OF THE ACTION

73.     This is a conspiracy to violate civil rights action challenging the state of Alabama history, custom and practice of obstructing justice of people of color ("black people") and Civil Rights Act of 1866, 14 Stat. 27-30, guaranteed the rights of all citizens to make and enforce contracts and to purchase, sell, or lease property. Passed by the 39th Congress (1865–1867) as

30

S.R. 61, the bill mandates "all persons born in the United States," with the exception of American Indians, were "hereby declared to be citizens of the United States." The legislation granted all citizens the "full and equal benefit of all laws and proceedings for the security of person and property," "and citizen's property, retaliating against visual journalists and other members of the press for exercising their First Amendment rights to gather news regarding police activity in public places.

74.     Plaintiffs' alleges all injuries were known by Defendants, YMCAs, et al., on June 18, 2016, and Defendants, YMCAs, et al., did not call cell phone until Monday, December 20, 2016; Plaintiffs', Willie Lee Jackson Jr., said, "I cannot get out of the bed, because I am hurting all over my body, especially my back, and my heart beats faster when I lay on my side;" Plaintiffs' said the YMCA agent, Jeremy Mead, on Monday, June 20, 2016, but Defendants did nothing to help injured Plaintiffs; Defendants agent, YMCA Ex. Dir. Jeremy M. Beasley called "Willie Jackson" on Tuesday, June 22, 2016, and I identified the same injuries and pain; YMCA waited until Thursday, June 23, 2016, after Plaintiffs visit to personal Internal Medicine doctor; and Defendants' agent, Pelham Brand of YMCA Ex. Dir. Jason M. Beasley changed an Incident report (dated 6/22/2016).

75.     Plaintiffs alleges after received a phone call after doctors visit from YMCA of Birmingham Risk Management Director, Kristine Williams, on Thursday, June 23, 2016 after 9am. Kristine Williams apologized on Willie Jackson's cell phone voice mail, stating, Mr. Jackson, my name is Kristine Williams, and I am calling from the YMCA of Birmingham, etc., please call me as soon as you can. Kristine Williams said, "Mr. Jackson, we have been playing phone tag; my name is Kristine Williams, and I am calling about your accident at our Pelham

YMCA. First, I apologize for contacting so late, but this is the first time I heard about your accident, and this is totally our fault; I cannot believe that weight bench was of the fitness floor; it should not have been used by members (anybody, guest. e.g.)

76.     On or before July 5, 2016, Plaintiffs, Willie Lee Jackson Jr., et al., sent a rejection letter of defendants' offer for $10,000 liability policy for medical injuries and all damages, by insurer of all YMCs, the Redwoods Group – A Crum & Forster Company, and Plaintiffs submitted a counter offer in "Demand Letter" for liability settlement of over $100 million dollars for tort damages and criminal acts; Defendants responded with fraudulent liability insurance policy by emails, U.S. Postal mail, telephone calls, and wire (electronically), each defendants' agents, collectively and individually, violated federal statues  18 U.S.C. § 1346- Honest Service Fraud, 31 U.S.C. § 3729- False Claims Act, when the defendants' insurer denied plaintiffs medical treatment, exams, medical diagnosis, medical test (MRIs, Brain Scan, Orthopedic test and surgeries, Neurology test  and surgeries, Urology test and treatment, General surgery and test, PT-Physical Therapy, Message Therapy, Chiropractic Therapy, Family Therapy, etc.), and YMCA, et al. insurance liability policy claims adjuster for liability injuries, in violation of ALA CODE§ 13A-10-119, Alabama Code - Section 13A-10-129  violation with Physical Evidence.

77.     Notwithstanding this clearly established the YMCA's "Contract" Obligation to the Plaintiffs' by contacting the insurer of all YMCAs, the Redwoods Group _ A Crum & Forster Company  on June 23, 2016, and the Redwoods Group n or before June 24, 2016, the Defendants' insurer, the Redwoods Group – A Crum & Forster Company ("Redwoods"), et al., agent Beth Cooper, AIC AINS, Claims Analyst said, "Dear Mr. Jackson, I am sorry that you were injured at the YMCA on June 18, 2016. The Redwoods Group through United States Fire

32

Insurance, part of the Crum & Forster Group is the authorized claims administrator for the policy

of the YMCA. The insurance policy contains limited Medical Payments coverage with a limit of

$10,000. This coverage is extended at our discretion, regardless of fault, and will pay for medical

expenses incurred as a direct result of an injury sustained on their property. These expenses must

be "incurred and reported to us within one year of the date of the accident" and this coverage is

"excess of all health and/or disability insurance benefits available to the injured person, whether

collectible or not." Please submit your medical bills to your health or disability insurance carrier,

including Medicare and/or Medicaid for payment. If there is a co-payment or deductible due

after their consideration, please submit the following to my attention for review: 1) your health

insurance carrier's Explanation of Benefits statement and 2) the medical provider's

adjusted/revised billing after they have received payment from your health insurance and

adjusted their billing accordingly. The Redwoods Group, Inc. reserves the right to interpret and

identify to you any other applicable portions of the Medical Payments Coverage as issues arise

or where further explanation is needed. If you have questions, please contact me at (800) 463-

8546 ext 331, by direct line 919-469-7331 or by email: bcooper@redwoodsgroup.com.

     78.     On or before July, Beth Cooper, AIC AINS, Claims Analyst hired the Redwoods

Group – A Crum & Forster hired third-party adjusters Rosemary Cubbedge, CPCU, President at

Integrated Claim Solutions, Inc., address: 688 Maitland Avenue, Altamonte Springs, FL. 32701,

1-800-962-4275, and Greg Pontes, Claims Adjuster/Investigator, talked YMCA's agents

(CEO/President Stan Law, COO Melvin Lane Vines, Risk Management Director Kristine

Williams, Ex. Dir. Jason M. Beasley, Membership Dir. Jeremy Mead, Fitness Dir. Erwin Brown

(Smith), Cameron Good, Montana Rose Etten-Bohm, Stuart Pease, Emily Lemus, HR Dir.

Alethea Hardy, Greg Pontes talked all witnesses (members, guest, contractors-welder, etc.), talked to injured Plaintiffs, Willie Lee Jackson Jr., and Greg Pontes took photos, collected all surveillance videos, took pictures of the weight room area, took pictures of the weight bench, and more; as a third-party, Integrated Claim Solutions, Inc., are not subject to any privileges, or lawyer/client privilege and material fact finding evidence was not shared with plaintiffs in State of Alabama Court, and Plaintiffs, Willie Lee Jackson, Jr., have never received or view real surveillance videos, or other material evidence from Defendants, the National Council of Young Men's Christian Association of the United States of America ("YMCA of USA") nonprofit corporation (foreign and domestic), the National Council of Young Men's Christian Association of the United States of America ("YMCA of USA") for profit corporation (foreign and domestic) both d/b/a YMCA of Birmingham, the Redwoods Group – A Crum & Forster Company, Aetna, Inc/Corp. d/b/a Aetna Health ERISA Healthcare Plan, the states (Jefferson County, Alabama Circuit (Civil) Court) Court, and Defendants are in multiple violations of Aiding and Abetting 18 U.S.C. § 2, Obstruction of Judicial Proceedings 18 U.S.C. § 1503, Witness Tampering 18 U.S.C. § 1512, Subornation of Perjury 18 U.S.C. § 1622, Obstruction of Justice 18 U.S.C. § 1519, Conspiracy Against Rights 18 U.S.C. § 241, Deprivation of rights under color of Law 18 U.S.C. § 242, Hate Crimes Prevention Act 18 U.S.C. § 249, Federally protected activities 18 U.S.C. § 245, Conspiracy to Defraud the United States 18 U.S.C. § 371, and violations of Sarbanes-Oxley Act of 2002 that "includes protections for those who blow the whistle, within their companies or externally, on various forms of fraud and securities violations", violations of false claims act 31 U.S.C. § 3729, Witness Retaliation 18 U.S.C. § 1513, and Peonage 18 U.S.C. § 1581, violation Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act") that "protects

34

those who report to the Securities and Exchange Commission ("SEC") violations of securities laws, the Foreign Corrupt Practices Act, and Financial Consumer Protection laws", and more federal and state violations.

79.     On and before 19, 2016, the Defendants' insurer, the Redwoods Group – A Crum & Forster Company ("Redwoods"), et al., agent R. Scott Bricker, JD said, "Thank you for your e-mail. Please note this matter has now been re-assigned to me and direct all future correspondence to me. I am sorry you were hurt at the YMCA and I have read your demand letter dated July 6th wherein you seek to recover in excess of 100 million dollars from this incident. I must respectfully decline your settlement demand at this time. I would like to resolve the matter with you but in order to make an informed offer I will need to gather all medical records (and associated bills) documenting your injuries from this accident. For example, you mention treating with a Dr. Emmanuel Odi in your e-mail below. In order to obtain your records I will need to obtain a signed medical authorization from you (your providers will not release your records without an authorization from you) or you can obtain the records and forward them to me. Please let me know how you wish to proceed. If you prefer to provide me with an authorization I can email a copy to you for completion."

80.     On and before July 19, 2016, the Defendants' insurer, the Redwoods Group – A Crum & Forster Company ("Redwoods"), et al., agent R. Scott Bricker, JD said, "Thank you for your e-mail. At this time I do not need IME's to assist with the evaluation of your claim. What I do need are medical records and bills related to any treatment you have received for injuries you believe occurred at the YMCA on June 18th. Please let me know if you would like to obtain & submit those materials yourself or if you want me to send you a medical authorization."

35

81.     On and before September 1, 2016, Defendants, the Redwoods Group – A Crum &

Forster Company ("Redwoods"), et al., agent R. Scott Bricker, JD said, "Mr. Jackson, This will

confirm firm that we received a 26 page fax on Sunday evening (August 28th). The fax contains

medical records for Willie Jackson beginning in September 2014 and ending in June 2016"; on

September 9, 2016 "Redwoods Group" agent R. Scott Bricker, JD said, "Following up on our e-

mail exchange last week where I confirmed our receipt of medical records via fax. The last

record (dated 6/23/26} indicates the doctor planned to obtain x-rays of both shoulders and your

spine and obtain an MRI of your spine. Have those procedures taken place? If so, it will be

important for me to see the records documenting the injuries those procedures revealed;" and

"Also, your email below references treatment at Therapy South and several other medical

facilities. I will want to obtain records from all the providers that have treated you for injuries

you sustained at the YMCA. 1f you are still treating then we can wait until you are done and

gather everything at the same time;" and on September 15, 2016 "Redwoods Group" agent R.

Scott Bricker, JD said, "Thank you for the images you emailed. If you have the doctor's review

and analysis of the images that would be helpful;" and on September 22, 2016 R. Scott Bricker,

JD said, "Got it - Thank you;" and on Nov. 1, 2016 said "Also, the YMCA forwarded a copy of

the security video you requested. I will have it mailed to you;" and on December 1, 2016 R.

Scott Bricker, JD said, "Good morning. l have requested a payment in the amount of $244.43 for

receipts you submitted from Therapy South Vestavia and Excel Internal Medicine ($166.43,

$63.00, $15.00). As I mentioned in a prior e-mail, please include provider documentation

confirming the nature of the service provided for each receipt or invoice submitted. I am unable

to include payment based on documentation you submitted for your student loan, Callahan Eve

Hospital or Cardiovascular Associates as those charges do not appear related to your June 18, 2016 accident at the Birmingham YMCA."

82.     On December 8, 2016, the Redwoods agent R. Scott Bricker, JD said, "Mr. Jackson, The offer of $10,000 solely reflects your claim for general damages (pain/suffering) for the accident on June 18, 2016. It does not contemplate future medical expenses or claims by other family members. 1 am not asserting any argument of contributory negligence on your part. If you are claiming lost wages. I will need documentation from your doctor confirming he or she took you out of work due to the injury from 6/18. I will also need documentation from your employer regarding any wages you lost. If your health carriers decided to see reimbursement for any medical expenses paid on your behalf from this incident, they will send their subrogation material directly to us. The YMCA carriers a $1,000,000 per occurrence general liability policy. – scott."

83.     Upon the federal question reporting manufacture's weld seam failure to the United States on or before on June 1, 2016, and the YMCA failed to relay dangerous known manufacture problem to the United States Consumer Product Safety Commission (CPSC) as a permanent independent agency of the United States federal government and defined its basic authority, under laws of the federal government of the United States.

84.     The YMCA insurer the Redwoods Group – A Crum & Forster Company worked with plaintiffs' lawyer, Gerald C. Brooks, Esq. to file a civil complaint, as a "slip and fall" visitor/no contract guest at the YMCA on June 18, 2016, in Jefferson County, Alabama Circuit Civil Court on August 4, 2017 – case #: 01-CV-2017-903269.00 (Complaint Filing Ex. A), the defendants' insurer and plaintiffs' healthcare insurer, John Does and Jane Does in concert

37

asserted YMCA liability policy was $10, 000 cap for any liability for any and all injuries and

damages caused by Defendant, and the defendants violated federal statues U.S.C. § 3729, False

Claims, violate contract in email, U.S. Postal mail. The defendants in their answers, responses to

interrogatories and request for production, court hearings, by and through counsels, severely

denied the allegations in the plaintiffs' compliant in Jefferson County, Alabama Circuit (Civil)

Court, and insisted that they were not liable, when defendants violated federal statue U.S.C. §

3729, False Claims Act in Jefferson County, Alabama Courtroom.

      85.    Plaintiffs alleges Defendants are liable for both constitutional and statutory

violations of the 1st Amendment of the United States Constitution states, "the right of the people

to petition the government for redress of grievances;" and "to get divorced recognized as

fundamental private interests," *See Boddie v. Connecticut, 401 U.S. 371 (1971)*(citation omitted),

and "No State shall enter into any Treaty, Alliance, or Confederation, and pass any Bill of

Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant Title of

Nobility." Defendants are liable for both constitutional and statutory violations of the 3rd

Amendment "articulated a constitutionally protected right to privacy," *See Griswold v.*

*Connecticut, 381 U.S. 479 (1965)*(citation omitted), and Defendants' actions in violation of

HIPPA Laws 45 C.F.R. § 164.524(a) submitting any documents to willfully cause bodily injury

or attempt to cause bodily injury with dangerous weapon, welded/repaired adjustable incline

weight bench, and denying Plaintiffs medical treatment, liability insurance, and Independent

Medical Exam for injuries, because he was black in violation of 18 U.S.C. § 249 ("Hate Crimes

Prevention Act"), while by force or threat of force willfully injures, intimidates or interferes

with, or attempts to injure, intimidate interfere with Plaintiffs' legal rights, privileges and

immunities to file "Civil Complaint for violation of contract, Plaintiffs should Amend this

Complaint to add "misfeasance", "nonfeasance", and "malfeasance" acts for failure to discharge

public obligations existing by federal and state law, custom, or statue, See Humphrey's Executor

v. United States, 295 U.S. 602 (1935)(citation omitted).

86.     From before or after 2001 to 2017 or 2018, Plaintiffs and "assignees", Willie Lee

Jackson, Jr., et al. and the YMCA of the USA ("National Council of Yong Men's Christian

Association of the United States of America"), "obligor" d/b/a the YMCA of Birmingham

("Young Men's Christian Associations of Birmingham") d/b/a Pelham Branch of the YMCA of

Birmingham, "assignor", under contract, law, quasi-delict, crimes and quasi-contract (by Judge's

conflict of interest, abuse of power, abuse of process, unconstitutional orders and rulings), for

membership contract payment bi-weekly (payroll draft) or monthly (bank account draft) for

membership contract ("Family + Tennis") include workout weights, cardio exercise equipment,

e.g. Bikes, Stairmaster, etc., swimming, aerobics classes, basketball, and personal training, where

under contractual and legal obligation the Plaintiffs sued the known Defendants, YMCA of the

USA, YMCA of Birmingham, World Alliance of YMCAs, the Redwoods Group – A Crum &

Forster Company, and known or unknown fictitious defendants for violation of contractual

obligation  negligent acts, gross negligence  "" of dangerous condition to assignees or guest, "

*See Thomas and wife v. Winchester, 6 N.Y. 397, (1852) WL 4748 (N.Y.)*

87.     Defendants' and Defendants' representatives, agents, counsels or unnamed

defendant (a state named in defendant's affirmative defenses in state court or unnamed states)

tortuous acts and criminal acts violating the federal constitution, custom, laws and statues of the

United States of America by perjury, subornation of perjury, corruption and retaliating by

39

conspiracy violations of federal statue 18 U.S.C. § 371 conspiracy to violate civil rights, conspiracy violation to defraud the United States of America, conspiracy to Obstruction of Judicial proceedings in violation of 18 U.S.C. § 1503, conspiracy violation of 18 U.S.C. § 1512-witness tampering, conspiracy to commit insurance fraud by violations of 18 U.S.C. § 346 honest service fraud and 18 U.S.C. § 1341 mail fraud and 18 U.S.C. § 1341 wire fraud and 18 U.S.C. § 1513 witness retaliation and 18 U.S.C. § 1622 Subornation of perjury and conspiracy by 18 U.S.C. § 242 deprivation of rights under color of law and 18 U.S.C. § 2 aiding and abetting the violation of 18 U.S.C. § 1519 Obstruction of Justice by 31 U.S.C. § 3729 false claims conspiracies, *See Sylvester v. Parexel International, LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-039, 042*(citation omitted), in concert violations of Sarbanes – Oxley Act of 2002, *See Morrison v. National Australia Bank, 561 U.S. 247 (2010)*(citation omitted), and Securities Act of 1933 and Securities Exchange Act of 1934 and the Employee Retirement Income Security Act (ERISA) of 1974-"The Human Rights Law is preempted with respect to ERISA benefit plans only insofar as it prohibits practices that are lawful under federal law," *See Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983)*(citation omitted), and Investment Advisers Act of 1940, *See Merck & Co. v. Reynolds, 559 U.S. 633 (2010)*(citation omitted), any material evidence facts that were knowingly and willfully submitted in a Court that care unlawful or fraudulent about Plaintiffs Willie Lee Jackson Jr.'s medical records or actions by the Defendants in concert with other Defendants and their agents violated 18 U.S.C. § 241 (Conspiracy Against Rights) and the Corporate and Criminal Fraud Accountability Act of 2002, *See Andrea L. Brown v. Lockheed Martin Corporation, ARB Case No. 10-050, ALJ Case No. 2008-SOX-049, (2011)*(citation omitted), and the Defendants conspiracy violation of 18 U.S.C. § 242 (Deprivation of Rights

Under Color of Law) and Defendants' actions in conspiracy violations of federal statue 18
U.S.C. § 371, "1(a) To act under color of law does not require that the accused be an officer of
the State. It is enough that he is a willful participant in joint activity with the State or its agents."
*See United States v. Price, 388 U.S. 787 (1966)*(citation omitted).

88.     Defendants are liable for both constitutional and statutory violations of the 4th
Amendment states, ("the right of the people to be secure in their papers, and effects, against
unreasonable searches and seizures") "he alleged that the President's motives (*i.e.,* retaliation for
plaintiff's testimony at a congressional hearing) mandated a finding that his actions fell outside
his official duties;" *See Halperin v. Kissinger, 578 F. Supp. 231 (D.D.C. 1984)*(citation omitted).
Defendants are liable for both constitutional and statutory violations of the 5th Amendment ("nor
be deprived of life, liberty, or property, without due process of law"- "All persons within the
territory of the United States are entitled to its protection, including corporations, aliens, and
presumptively citizens"). A law was enacted by the U.S. Congressional Constitutional Act on
July 13, 1787 was entitled the Northwest Ordinance of 1787 that contains in its Articles of
Compact a set of rights that constituted the organic law – the fundamental law – of the United
States from a few states abutting the Atlantic to the many states of a manifestly continental
republic, to protect citizens' ("All Races") "privileges" and "immunities" to extend the freedoms
in the Ordinance's Articles of Compact throughout the territory of the United States – west of the
Pacific and south to the Gulf of Mexico, to protect the "rights of citizens against both state and
federal authority", and "the principles of the Ordinance – free soil, civil rights protected against
state abridgement;"

❖ Then Peter Blow moved to Alabama 1818 and was labeled as owner of six slaves
(citizens of the United States), one name Dred Scott. Peter Blow, in violation of the

41

Northwest Ordinance of 1787 "defines the fundamental civil liberties of American citizens", moved to Missouri in 1830 (in violation of the laws) unconstitutionally holding citizens as property and sold a citizen by the name of Dred Scott to U. S. Army surgeon Dr. John Emerson (who took an Oath to "Do no Harm"), and Dr. Emerson traveled to Fort Armstrong in Illinois ("considered a free state") prohibited slavery in its constitution 1819 when admitted as a state, accordingly with the set by the "Original 13 states", the Northwest Ordinance 1787 Articles of Compact "prohibited slavery", in 1837, John Emerson left Dred Scott and his wife at Fort Snelling for profit as leased property in a free state, which continued the direct violation of the Missouri Compromise and the Northwest Ordinance and the Wisconsin Enabling Act. Dred Scott was denied the right to an education, and his family were taught the law, but all Courts & Judges were Constitutional scholars and aware of the violation of the Missouri Compromise and the Northwest Ordinance and the Wisconsin Enabling Act. Every action in the United States of America under that violated any right, privilege and immunity of all Black Americans born or transported to any and all states, countries and territories, including the United States of America ("USA") has claim against those states, countries and territories, and may require the United States to become a Defendant in this case; See the U. S. Supreme Court ruling in *Dred Scott v. Sanford, 60 U.S. (19 How.) 393 (1857)*, and the President-elect James Buchanan statement, "*the slavery question would be speedily and finally settled by the Supreme Court*," and Supreme Court Chief Justice Roger Taney statement, "*the question is simply this: Can a negro, whose ancestors were imported into this country, and sold as slaves, become a member of the political community formed and brought into existence by the Constitution of the United States, and as such become entitled to all the rights, and privileges, and immunities, guarantied by that instrument to the citizen?* – Dred Scott decision, was the U.S. Supreme Court landmark decision, the decision included Dred Scott's wife (Harriet) and children; Supreme Court Justice Roger Taney held, "*that the U.S. Constitution was not meant to include American citizenship for black people, regardless of whether they were enslaved or free, and so the rights and privileges that the Constitution confers upon American citizens could not apply to them*"; and "*perpetual and impassable barrier was intended to be erected between the white race and the one which they had reduced to slavery*."

89.     Defendants are liable for both constitutional and statutory violations of the 7th Amendment of the U. S. Constitution states, "the Seventh Amendment to the United States Constitution ensures the right to a trial by jury in any civil lawsuit involving claims valued at more than $20," states, ex. Alabama, Illinois, Florida, North Carolina, New York, Oklahoma, e.g., under (ArtVI.C2.1.1.3) "Supremacy Clause," Article VI, Clause 2 states, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

❖ "Federal Organic Law: The Declaration of Independence, the Articles of Confederation, the Northwest Ordinance of 1787, and the United States Constitution, and these protect US citizens against state abridgement of your privileges, immunities, and rights that we must protect."

❖ Defendants are liable for both constitutional and statutory violations of the Nineth Amendment "Enumerated Rights and Fundamental Rights",

❖ Defendants are liable for both constitutional and statutory violations of the 10th Amendment states, "the Tenth Amendment, which provides that the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

❖ Defendants are liable for both constitutional and statutory violations of the Fourteenth Amendment prohibits the state from depriving "any person of life, liberty, or property, without due process of law"; Supreme Court suggest rights protected under the

43

Fourteenth Amendment can be understood in three categories: (1) "procedural due process;" (2) the individual rights listed in the Bill of Rights, "incorporated" against the states; and (3) "substantive due process"; the Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. *See **Mullane v. Central Hanover Bank*** (1950), and state violation of defendant's rights and other possible class members of the complaints for exercising their Constitutional rights.

❖ Defendants are liable for both constitutional and statutory violations of the XIV Amendment of U.S. Constitution states, "violation of the clause of the Fourteenth Amendment forbidding a State to deprive any person of property without due process of law, and which ground of objection was repeated in the highest court of the State, provided the judgment of the court, by its necessary operation, was adverse to the claim of Federal right and could not rest upon any independent ground of local law," and "the prohibitions of the Fourteenth Amendment refer to all the instrumentalities of the State, to its legislative, executive and judicial authorities, and, therefore, whoever, by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the State violates the constitutional inhibition; and, as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State," *See Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226 (1897).*

❖ Defendants are liable for both constitutional and statutory violations of the Bill of Rights (outlined the individual liberties as well as government structure) states, "If courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the

legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply," *See Marbury v. Madison, 5 U.S. 137 (1803)* (citation omitted).

90.     The Plaintiff has knowledge of the allegations of the Complaint; and upon information and belief, Employees Emily Lemus and Cameron Good were present immediately following the bench failure on June 18, 2016, as well as YMCA member Paul Troxell is believed to have been working on the equipment next to the Plaintiff. Executive Director Jason Beasley viewed video surveillance of the incident area. Employees Beasley, Lemus and Good may be contacted through undersigned counsel.

91.     On August 9, 2018, IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT – CASE: 2017-CV-903269.00, submitted in a Court of Law as evidence to material facts by National Council of Young Men's Christian Associations of the United States of America ("YMCA of the USA"), non-profit and for-profit, domestic and foreign, based in Chicago, IL. and Tallahassee, FL. as base Corporations addresses, d/b/a YMCA of Birmingham submitted documents in concert with other Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in "**Interrogatory #1**

92.     Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in "**Interrogatory #12**

93.    Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in "**Interrogatory #12**

94.    Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in "**Interrogatory #12**, YMCA agent- Executive Director Jason M. Beasley answered, **RESPONSE:** Defendant YMCA states that the manufacturer of the exercise bench in question is believed to be Magnum Fitness Systems, and the contact information for **Patrick Ellis of Northland Industries dba Magnum Fitness Systems** is directed to **Glenn E. Ireland of Carr Allison, 100 Vestavia Parkway, Birmingham, Alabama 35216, and their file no. 70009-12**; (b) Defendant YMCA states that it is unable to locate a purchase invoice for the subject bench and still has possession of the bench subject to this lawsuit. **Further no known maintenance reports or repairs exist for this bench;** (c) Pursuant to the foregoing and the General Objections, there are no other "incidents" with this type bench at the Pelham YMCA during the time frame that Jason Beasley was the Executive Director beginning January 2014 to the date of the incident; **2nd SUPPLEMENTAL RESPONSE:** YMCA objects to this restated interrogatory and references Plaintiff to the above responses originally provided. Further, said restatement seeks information that is not relevant, unduly burdensome and overly broad and is not reasonably calculated to lead to the discovery of admissible evidence

46

95.     Defendant's Response in "**Interrogatory #13**, YMCA agent- Executive Director Jason M. Beasley answered, **RESPONSE**: Defendant states that the bench subject to this litigation was immediately removed from the floor following the June 18, 2016 and remains in storage; **2nd SUPPLEMENTAL RESPONSE:** Please see previously produced video surveillance and **YMCA Docs Bates 000455 through 000480** for the overview and pictures of the facility, exercise area and subject equipment. Defendant has produced video surveillance by mail and hand delivery of a CD-ROM and electronically through a downloadable link via Sha refile. In addition, Defendant has again attached hereto another copy of said video surveillance by recording the video monitor since Plaintiff claims he is not able to view the video by either medium provided."

96.     "Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in **Interrogatory #15**, YMCA agent- Executive Director Jason M. Beasley answered, The YMCA of the USA d/b/a The YMCA of Birmingham- YMCA has already provided all information in its possession related to the purchase of the subject weight bench and a copy of the invoice for the replacement bench. -Respectfully submitted on August 9, 2018; AS TO INTERROGATORY RESPONSES: Printed and Signed by Jason M. Beasley; **Interrogatory #15**, Sworn to and subscribed to before me this the 14 day of August, 2018.

97.     "Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm.

47

Stated under oath in **Interrogatory #16. RESPONSE**: Pursuant to the foregoing and the General Objections, there have been no other incidents of alleged physical injury or complaints thereof at the Pelham YMCA regarding the type bench involved in this incident during the time Jason Beasley was the Executive Director (beginning in Jan. 2014) to the date of the incident; **2nd SUPLEMENTAL RESPONE**: YMCA objects to this restated interrogatory and reiterates that the failure of a bench at the point of weld at the Pelham YMCA is the first known occurrence of an incident such as this. The request of Plaintiff is unduly burdensome and seeks information that is immaterial and not relevant and is otherwise not reasonably calculated to lead to discoverable evidence."

98.     On August 9, 2018, IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT – CASE: 2017-CV-903269.00, submitted in a Court of Law as evidence to material facts by National Council of Young Men's Christian Associations of the United States of America ("YMCA of the USA"), non-profit and for-profit, domestic and foreign, based in Chicago, IL. and Tallahassee, FL. as base Corporations addresses, d/b/a YMCA of Birmingham submitted documents in concert with other Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm. Stated under oath in **Interrogatory 15, Copy of Signed Document**:

99.     On August , 2018, IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT – CASE: 2017-CV-903269.00, submitted in a Court of Law as evidence to material facts by National Council of Young Men's Christian Associations of the United States of America ("YMCA of the USA"), non-profit and for-profit, domestic and foreign, based in

48

Chicago, IL. and Tallahassee, FL. as base Corporations addresses, and YMCA of the USA submitted documents in concert with other Defendants knowingly and willfully and under color of law to United States Court by and through counsel Joseph D. Leavens, Esq. and David R. Boyd, Esq. of Balch & Bingham Law Firm.

100.    On August 15, 2018, "IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT, Doc. 393 – INTRODUCTION", "Y-USA has nothing to do with this case. It does not own or operate any local YMCAs or their equipment. It does not own or maintain the premises or weight bench in this case. Y-USA did not manufacture, purchase, sell, repair, maintain or inspect the allegedly failed weight bench, or oversee any activity related to it. Y-USA is not an agent or principal of local YMCAs. It does not hire, supervise or train employees at local YMCAs and had no involvement with the employees at the YMCA of Birmingham. Y-USA is not a parent organization of the YMCA of Birmingham. On the contrary, it is an entirely separate and independent organization. Finally, although Y-USA offers certain resources and information about best practices to local YMCAs, there is no evidence of any connection between any such resources or information that Y-USA might have provided to the YMCA of Birmingham and the weight bench or incident in question. In short, there is no substantial evidence entitling the Jacksons to present their case to a jury. Summary judgment is due to be granted.[1]

101.    Cont. "IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT Doc. 393 – STATEMENTS OF FACTS", Defendant Y-USA states, "Plaintiff Willie Lee Jackson alleges he suffered personal injuries arising out of the failure of a weight bench he was using while at the Pelham branch of co-defendant YMCA of Birmingham. *See* Doc. 306 (August

6, 2018 Amended Complaint) at~ 15. More specifically, Mr. Jackson alleges that, while he was

completing a "Shoulder Press" from a seated position on the bench, it snapped and collapsed

from underneath him. *See* Doc. 306 at ~ 21 . Plaintiffs claim various personal injuries (mental

and physical) and have collectively asserted negligence, gross negligence, wantonness, and loss

of consortium claims against Y-USA, the premises-owning codefendant YMCA of Birmingham,

and numerous fictitious defendants. *See generally* Doc. 306." Defendant Y-USA states, "Y-USA

is an independent charitable organization with its principal place of business in Chicago, Illinois.

*See* Exhibit A (Lozada Affidavit) at ~ 3. Y-USA does not own, operate, control, or oversee in

any way any local YMCAs, including co-defendant YMCA of Birmingham. *See* Exhibit A

(Lozada Affidavit) at if 5. Instead, Y-USA is a separate and legally independent entity from the

many local YMCAs across the country. *See* Exhibit (Lozada Affidavit) at (citation mark)

[1]Independent of the arguments asserted against the Jacksons collectively, Y-USA moves
for summary judgment on all of Mrs. Jacksons' claims. To date, Mr. Jackson has appeared and
represented all patties in this action. He successfully moved for a guardian ad litem to represent
his minor son, *see* Doc. 361, but continues to represent his wife in this suit. Because Mr. Jackson
is not a licensed attorney, Alabama law does not permit him to represent his wife. *See Ex parre
Ghafary,* 738 So. 2d 778, 779 (Ala. 1998) (the right to represent oneself "does not extend to the
representation of interests other than those of the pro *se* litigant."); *see also Fuller v. Green Tree
Servicing, LLC,* 194 So. 3d 241,242 (Ala. Civ. App. 2015) (citing *Exparte Ghafary* and stating,
"Andrews, a nonattorney, could not represent Fuller in his action against Green Tree, and
Andrews cannot represent Fuller on appeal; therefore, we dismiss that p011ion of the appeal.")"

102.    On judicial court records," IN THE JEFFERSON COUNTY, ALABAMA

CIRCUIT CIVIL COURT Doc. 393 – STATEMENTS OF FACTS", 4. It has no involvement in

the day-to-day operations of local YMCAs. *See* Exhibit A (Lozada Affidavit) at ~ 4. While Y-

USA makes non-mandatory resources and best practices information available, many local YMCAs choose not to use these resources or adopt these best practices. *See* Exhibit A (Lozada Affidavit) at 'tt 4. There is no evidence in this case that Y-USA provided any resource or best practice information relating to the failed weight bench, nor is there any evidence that YMCA of Birmingham used or failed to use any resource or best practice made available by Y-USA.

Critically important to this case, the only evidence is that Y-USA played no role in the operations or activities of the YMCA of Birmingham. For example,

• Y-USA does not have any involvement in the hiring, firing, salaries, training or supervision of any local YMCA employees. *See* Exhibit A (Lozada Affidavit) at~ 5;

• Y-USA does not purchase, sell, own, operate, control, oversee, maintain, repair, inspect, approve or otherwise have any involvement in any facility equipment at any local YMCA. *See* Exhibit A (Lozada Affidavit) at 'tt 5;

• Y-USA does not supervise, control or oversee any work at any local YMCA. *See* Exhibit A (Lozada Affidavit) at~ 3;

• Y-USA does not provide any funding for any local YMCAs. *See* Exhibit A (Lozada Affidavit) at~ 5;

• Y-USA does not grant any agency authority to any local YMCAs, nor is it granted any agency authority from local YMCAs. *See* Exhibit A (Lozada Affidavit) at~ S;

• Each local YMCA is an autonomous, independent organization with its own corporate charter, by-laws, governing board, branches, executives, staff, buildings, assets and other resources; *See* Exhibit A (Lozada Affidavit) at~ 4;

• Y-USA has no shared pecuniary interest with any local YMCA. *See* Exhibit A (Lozada Affidavit) at il 4.

• Y-USA played no role in the sale, purchase, operation, control, maintenance, repair, inspection or oversight of the weight bench that allegedly collapsed underneath Mr. Willie Jackson. *See* Exhibit A (Lozada Affidavit) at ~ 5; *see also* Exhibit B (Y-USA Interrogatory Responses) at 8;

51

• Y-USA did not witness the incident involving Mr. Willie Jackson. *See* Exhibit B (Y-USA Interrogatory Responses) at 5.

• Y-USA has no general knowledge of incidents taking place at local YMCAs. *See* Exhibit B (Y-USA Interrogatory Responses) at 8.

103. Cont. "IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT Doc. 393 – STATEMENTS OF FACTS", "Finally, each local YMCA is obligated to advise those using its facilities that it is an independent, autonomous organization, separate from Y-USA. *See* Exhibit A (Lozada Affidavit) at~ 6."

104. "IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT CIVIL COURT Doc. 393 – ARGUMENT", "**I. The Jacksons have no substantial evidence that Y-USA owed a duty, breached a duty, or that the breach of a duty owed caused the alleged injuries.**"

"The Jacksons' Amended Complaint asserts negligence, gross negligence, wantonness and loss of consortium claims against Y-USA. In order to prove a negligence claim one must show " (l) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and ( 4) damage or injury." *Jones Food Co. v. Shipman*, 981 So. 2d 355, 361 (Ala. 2006). "Negligence is a mixed question of law and fact. Whether the defendant in a negligence action owed the claimant a duty is strictly a question of law." *Id.* "Mere proof that an accident and an injury occurred is generally insufficient to establish negligence." *George v. Alabama Power Co.*, 13 So. 3d 360, 365 (Ala. 2008) (internal citations omitted). "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the

52

doing or not doing some act will likely result in injury." *Lafarge N. Amer., Inc. v. Nord,* 86 So.

3d 326, 333 -334 (Ala. 2011) *(quoting Tolbert v. Tolbert,* 903 So. 2d 103, 114-1 15 (Ala. 2004)).

(page 5 – 6) "Willfulness or wantonness imports premeditation, or knowledge and consciousness

that the injury is likely to result from the act done or from the omission to act, and strictly

speaking, is not within the meaning of the term ' negligence, ' which conveys the idea of

inadvertence, as distinguished from premeditation or formed intention." *id.* The negligence claim

against Y-USA necessarily fails because the Jacksons cannot cite a single piece of evidence that

might establish a duty owed, a breach of that duty, or causation on the part of Y-USA. Y-USA

did not owe a duty to the Jacksons, nor did Y-USA do anything (or fail to do anything) that

proximately caused their alleged injuries. In fact, there is a complete lack of evidence

implicating Y-USA in any fashion. Because there is no evidence of any action or omission by Y-

USA, there is likewise no evidence supporting a wantonness claim.[2] " **"II. To the extent the**

**Jacksons' claims against Y-USA are derivative of their claims against the YMCA of**

**Birmingham, summary judgment is due to be granted because there is no principal-agent**

**relationship and for the reasons stated in the YMCA of Birmingham's motion for summary**

**judgment."**

❖ "In truth, the Jacksons' theory of liability against Y-USA is unclear. As discussed above,

there is clearly no basis for direct tort liability. The Jacksons appear to advance some so1t of

single entity-based theory suggesting that Y-USA and the YMCA of Birmingham are effectively

the same entity. Or perhaps they are arguing for derivative or respondent superior-based liability,

as if the local YMCA is the agent of Y-USA. *See* Doc. 306 at ~ 11. 3 Either way, there are at

least two fatal problems with their argument."

❖ "First, there is no factual evidence to support any theory that Y-USA and the local

YMCAs are one and the same entity, that they are agents of each other, or that one of them is the

(page 6) agent of the other. More importantly, there is no evidence whatsoever that the YMCA

of Birmingham is the agent of Y-USA. In fact, all the evidence is to the contrary and the

Jacksons' unsupported allegations are insufficient to create an issue of fact. *See Richardson v.*

*Kroger Co.,* 521 So. 2d 934, 935 (Ala. 1988)…"

❖ "The Parliament of Great Britain and the State legislatures of this country have always

exercised the power of granting exclusive rights when they were necessary and proper to

effectuate a purpose which had in view the public good, and the power here exercised is of that

class, and has, until now, never been denied," *See U.S. Supreme Court Slaughterhouse Cases, 83*

*U.S. 16 Wall. 36 36 (1872), "ERROR TO THE SUPREME COURT OF LOUISIANA."*

105. Upon information and belief Plaintiff's counsel, Defendants and Defendants'

counsel swore an "Oath", ex.  insert lawyer's name  do solemnly swear (or affirm) that: am

duly qualified, according to the Constitution of this State, to exercise the duties of the office to

which I have been appointed, and that I will, to the best of my ability, discharge those duties and

will preserve, protect and defend the Constitution of this State and of the United States;

representing an American and International institution, the Young Men's Christian Associations

of the United States of America ("YMCA of the USA"); the violations of law, oath and Public

Trust is more than a tortuous or criminal actions; it's a betrayal of the plaintiffs, of the law, of the

public trust and the fundamental good nonprofit organizations receive 501 C-3 IRS status..

106. On August 15, 2018, IN THE JEFFERSON COUNTY, ALABAMA CIRCUIT

CIVIL COURT – CASE: 2017-CV-903269.00, submitted in a Court of Law as evidence to

54

material facts by National Council of Young Men's Christian Associations of the United States of America ("YMCA of the USA"), non-profit and for-profit, domestic and foreign, based in Chicago, IL. and Tallahassee, FL. as base Corporations addresses, d/b/a YMCA of Birmingham submitted documents in concert with other Defendants knowingly and willfully and under color of law to United States Court by and through counsel Thomas A. McKnight, Jr., Esq., Roderick J. Evans, Esq., James Britt Funderburk, Esq., and agents/lawyers of Wallace, Jordan, Ratliff & Brandt Law Firm.

107.    This is a civil rights action challenging the NYPD's policy, custom and practice of obstructing and retaliating against visual journalists and other members of the press for exercising their First Amendment rights to gather news regarding police activity in public places.

## IX.    Violation of the United States Constitution

108.    Defendants are liable for both constitutional and statutory violations of the United States of America Immunity Clause and Contract Clause violate Plaintiffs' rights, privileges and immunity to enter and enforce Contracts.

109.    The Civil Rights Act of 1866, 14 Stat. 27-30, guaranteed the rights of all citizens to make and enforce contracts and to purchase, sell, or lease property. Passed by the 39th Congress (1865–1867) as S.R. 61, the bill mandates "all persons born in the United States," with the exception of American Indians, were "hereby declared to be citizens of the United States." The legislation granted all citizens the "full and equal benefit of all laws and proceedings for the security of person and property."

110.    In the United States Constitution, Article I, Section 10, Clause 1, "Contract Clause", states that no State shall enter into any Treaty, Alliance, or Confederation; pass any Bill

of Attainder, ex post facto Law, or Law impairing the obligation of Contracts, or grant any Title
of Nobility.

111.     Contracts are obligations, and obligations are promises from one person to
another person or one company to another company or consumer. The 2006 Alabama Code -
Section 8-1-21 — Obligation not extinguished by accord until executed. In the United States
Constitution, Article IV, Section 10, Clause 1Article IV.

112.     Before June 2016, I had no medical history limbs, hand and finger numbness and
tingling. Before June 2016, I had no history of depression, anxiety, loss of joy and happiness.
Before June 2016, I was taken two (2) prescription medications, Adderall and Azor.

113.     I had a doctor's appointment on May 26, 2016 at Dr. Odi's office, Excel Internal
Med. Inc., 513 Brookwood Blvd. Suite 502, Birmingham, AL. 35209, phone: (205) 802 – 6773.
Dr. Odi's notes on social history list "exercises regularly, never smoker, no recreational drug
use", and Dr. Odi's notes on past medical history list "none", and Dr. Odi's notes on past
surgical history list "cuff repairs, left knee surgery, and hernia repair".

114.     Dr. Odi's notes review of systems list "CONSTITUTIONAL: no headache;
CARDIOLOGIC: no chest pain, no palpitation; RESPIRATORY: no shortness of breath, no
wheezing, no chest tightness; MUSCULOSKELETAL: no arthralgia, myalgia, arthritis;
NEUROLOGIC: no paresthesia, no muscle weakness. Dr. Odi's notes PHYSICAL
EXAMINATION: "No extra sounds, no murmur; CARDIOVASCLAR: heart sounds first and
second, pulses equal and bilaterally symmetrical, pulse rhythm regular; no extra sounds, no
murmur; NEUROLOGIC: DTR's and bilaterally symmetric and normal for upper and lower
extremities, cranial nerves grossly intact, reflexes are normal, no focal deficit;

MUSCULOSKELETAL: no obvious joint or bony abnormalities, no clubbing, cyanosis, or edema, no CVA tenderness.

115.    I went to get a quick workout on Saturday morning of June 18, 2016 at the YMCA of Birmingham-Pelham Branch of the YMCA of the USA. I did a little cardio and went to the weight (fitness) room to lift weights on machines, weight bench, and free weights.

116.    On Saturday, June 18, 2016, I started my shoulder dumbbell press exercise, that I have been doing over twenty (20) years of working out, and I felt good, normal, comfortable, and safe, then I lifted the two (2) heavy dumbbells overhead, and I heard a loud "bomb", and I found myself on the floor in pain, confused, shocked, unaware of what happen, scared, and nervous.

117.    I was severely injured on a repaired (welded) piece of equipment that I referred to as the "bench of death", because I believe the weight bench almost and could have killed me, caused severe body trauma/damage and caused "Traumatic Brain Injuries".

118.    The weight bench that caused my injuries and almost my life was a magnum adjustable incline weight bench that was repaired ("welded"), by the YMCA of Birmingham Pelham Branch, and I know this to be true, because the YMCA of Birmingham Pelham Branch Membership Director Jeremy Mead, YMCA of Birmingham Pelham Branch Executive Director Jason Beasley, YMCA of Birmingham Risk Management Kristine Williams, the Redwoods Group – A Crum and Forster Company Beth Cooper, AIC, AINS, and the Redwoods Group – A Crum & Forster Company R. Scott Bricker, JD, Executive Claims Adjuster all told me the weight bench was repaired by welding in June 2016 and July 2016.

119.    The welded weight bench was over sixteen (16) years old, according to Wallace, Jordan, Ratliff and Brandt attorneys, Roderick J. Evans, ESQ., J. Britt Funderburk and Thomas A. McKnight, ESQ…, and the weight bench was "out of warranty", past the manufacturer's (Matrix/Johnson Health Tech. North America, Inc., JHTNA) frame warranty of ten (10) years, under MATRIX/Johnson Health Tech. North America, Inc. warranty for frames.

120.    I survived the horrific incident at the Pelham Branch of the YMCA of Birmingham, but I felt and still feel, I had a near death experience on the repaired welded equipment. The YMCA of Birmingham Pelham Branch did not replace a screw or padding on a broken weight bench, furthermore the YMCA of Birmingham Pelham Branch did not place a warning sign for members and guest about repairing the weight bench frame by welding it, then placing the broken weight bench back on the floor for members and guest to use.

121.    Saturday, June 18, 2016 accident, involving Willie Jackson and welded adjustable incline weight bench, has destroyed my enjoyment of life, grossly impacted my emotional and social wellbeing, grossly damaged my physical and mental health, severely impacted my wife's emotional and social wellbeing, and her mental and physical health, and had major impact on my son's emotional and social wellbeing, and his mental and physical health, grossly impacted family members mental and physical health, and impacted our emotional and social wellbeing, grossly impacted our income, future earning power, life and liberty, and freedom to truth and justice.

122.    I wake up with indescribable bilateral sciatic nerve pain, and I go to sleep with indescribable bilateral sciatic nerve pain, plus spinal (cervical, thoracic, lumbar, sacral) cord radiating pain, shoulder pain, leg/ankle/foot pain, hand pain, and more medical issues listed in

58

my "Amended Complaints" IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA.

123.    Pelham surveillance videos of Saturday, June 18, 2016, show more than five (5) people near, within ten (10) feet of me, when I was doing shoulder press on repaired steel adjustable incline weight bench, and none (no one) responded to help me. YMCA of Birmingham Pelham Branch surveillance video from Saturday, June 18, 2016 shows me at the Pelham YMCA after lifting dumbbells, then weight bench collapsing under me with dumbbells in my hands, and me injured, frightened, confused, and no one coming to my rescue or offering medical assistance or calling emergency response services.

124.    YMCA of Pelham surveillance camera showed front desk and fitness desk actions prior to my accident and after my accident. The front desk two (2) YMCA employees, I believe were Montana Rose Etten-Bohm was on cell phone and Stuart Pease was next to her doing something.

125.    Surveillance video shows me walking to the front desk to report the weight bench snapping under me to two (2) YMCA employees, not Emily Lemus. I believe the two (2) employees were Stuart Pease and Montana Rose Etten-Bohm, who told me to report the weight bench snapping to fitness desk employee. They were pointing their fingers, area across from front desk, toward fitness desk, and they said, "tell him".

126.    I walked over to the YMCA fitness employee and reported what happen to Pelham YMCA employee Cameron Good (all three (3) YMCA staff witnesses (Stuart Pease, Montana Rose Etten-Bohm, and Cameron Good) have second-hand information).

59

127.    Cameron Good said, "Can you walk back into the fitness room and show me the area of the broken weight bench?" Cameron Good picked up the broken weight bench and began to walk away, then he stopped and said something to me, possibly involving the dumbbells. Cameron Good possibly asked me, "Can you replace the dumbbells to the dumbbell rack, then walked away from me, and took the weight bench away with him?" Cameron Good was at the YMCA of Birmingham Pelham Branch on Saturday, June 18, 2016, but his name was misspelled on the altered incident report.

128.    I had to walk back into the fitness area no incident report was used, because the staff could not find one. Paul Troxell was listed as a witness in "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTEROGGATORIES AND REQUEST FOR PRODUCTION", and subsequential defendant's responses to my/our ("Pro- Co-Plaintiffs"), "PLAINTIFFS' INTERROGGATORIES AND REQUEST FOR PRODUCTION".

129.    I remember passing a lady with a long ponytail and a man near the water fountain with eyeglasses and dark hair, near the water fountain, on my way to get water, and when I returned to do my second set of dumbbell presses.

130.    Paul Troxell was on a machine approximately twenty (20) feet away from me, when the repaired welded weight bench broke and collapsed under me doing shoulder press with > 50-55 lbs., and Paul Troxell was facing away from me, face-down on a hamstring curl machine, facing Pelham YMCA front-desk.

131.    I identified Paul Troxell as witness number three (3) on altered surveillance video. Paul Troxell was not working out on weight bench next to me, because the man on weight bench, during bench press, next to me was a white male with a bald head or noticeably short haircut that

60

I identified as witness number five (5). I viewed the 5 minute video, Attorney Thomas A. McKnight, Jr. stated, "We gave Mr. Jackson all the videos"...., and "the weight bench collapsed due to manufacture's weld seem failure"...., and "we have given Mr. Jackson the manufacture's attorney information"..... on the record IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA, Courtroom 610 of Circuit Judge, and Attorney Thomas A. McKnight, Jr. asserted this false statement in multiple hearings, discovery documents, phone calls, emails, U. S. Postal mail, hand carrier delivery (484 pages), electronic media (flash drive), USBs, Doc Share to me, the Court in concert with Attorney R. Scott Bricker, JD, Executive Claims Adjuster., Attorney James Britt Funderburk, ESQ., Attorney Gerald C. Brooks, ESQ., Attorney Roderick J. Evans, ESQ., Attorney David M. Boyd, ESQ., Attorney Joseph P. Leavens, esq., Attorney Greg P. Ireland, ESQ., and possibly Attorney Christopher Weaver, esq... After viewing all distorted surveillance video, I identified over 7 (seven) people in the YMCA of Birmingham Pelham Branch fitness area/weight room, and six (6) members/guests were closer to me than possibly Paul Troxell, who I identified as witness #3 on the distorted video surveillance.

132.    After viewing the distorted surveillance video, I identified and counted over 7 (seven) people in the YMCA of Birmingham Pelham Branch fitness area, and all were closer to me than Cameron Good, Stuart Peace, Montana Rose Etten-Bottom, who was identified as witness #3 by the victim Willie Jackson.

133.    I, Willie Lee Jackson Jr., gave a witness statement to an insurance investigator name Greg Pontes for Integrated Claim Solutions, Inc. for the Redwoods Group – A Crum & Forster, and Greg Pontes said, "I'm simply reporting the facts .....," and Greg Pontes electronically recording my statement and other witnesses statements for insurance

61

report/investigation includes facts (Jason Beasley 2016 statements), Jeremy Mead and Kristine Williams statements, Montana Rose Etten-Bottom, Stuart Peace, Cameron Good, Jack (in the hot tub-pool area), witness recorded statements (ex. Willie Jackson), witness identification, photos, recordings, videos (surveillance cameras), maps, owner's manuals, incident report/s, etc...

134.    YMCA front desk and fitness desk surveillance cameras videos should show all YMCA employees that Willie Jackson reported accident to on Saturday, June 18, 2016, and the behavior and actions of the YMCA of Birmingham Pelham Branch.

135.    I said, "Somebody called me the next day (Sunday, June 19, 2016), and I believe it was the fitness staff guy, Cameron Good, who took away the broken weight bench from fitness/weight room, that I talked to after the accident, and I gave my information (name, address, cell phone number), and he wrote it on scratch paper," but no one from the YMCA called me on Sunday, June 19, 2018 to check in on my health and well-being, check in on my drive home from the YMCA, check in on my possible injuries (Head Trauma, back pain, neck pain, headaches, loss of memory, leg pan, shoulder pain.

136.    On Monday, June 20, 2016, an article appeared in the Hispanic Executive titled, "The YMCA: A Home to Thousands, featuring an IP (Intellectual Property) attorney, who had been serving for nineteen (19) months as an intellectual property attorney, name Luis Lozada, Senior Legal Counsel, Marketing and IP, YMCA. In the article, IP Attorney Luis Lozada worked previously as a trademark and copyright attorney at Kelly Drye in New York City, so Luis Lozada, ESQ. knows (USTPO) U. S. Trademark and Patent Office Federal Laws of intellectual property, patent, copyright and trademark registration legal ownership.

137.    YMCA of Birmingham Pelham Branch membership director Jeremy Mead said, "My staff informed me that you were injured/hurt in the fitness/weight room on Saturday. I'm sorry you were injured on that bench. We had it welded, repaired, and I guess the bench broke at the weld seam," when he called me on Monday, Monday, June 20, 2016.

138.    Jeremy Mead asked, "How are you feeling; I watched the surveillance videos, and you look like you injured yourself." I said, "I'm stuck in the bed, and I'm hurting all over," to Jeremy Mead. I was in so much pain. Jeremy Mead said, "I will call and report this incident to our Executive Director Jason, and we will see what we can do to possibly help you out."

139.    I got upset by Jeremy Mead's response, "We will see what we can do to possibly help you out." I replied to Jeremy Mead, "What do you mean, y'all will see if you can help me out. I'm not paying for this, because I didn't do anything wrong, and I need to see a doctor." Jeremy Mead said, "I will contact Jason."

140.    Jeremy Mead Linked in page (2015-2016) Experience: YMCA of Greater Birmingham Membership Director (Pelham Branch), and I said, "the YMCA Pelham Branch Membership Director called me on Monday, Monday, June 20, 2016  2016, and he said, "My staff told me about the incident this weekend, where you hurt yourself.........the bench weas welded/repaired..."

141.    Jason Beasley called me, on Tuesday, Tuesday, June 21, 2016, and said, "Hello Mr. Jackson. My name is Jason Beasley, and Jeremy told me about what happen on Saturday, and I also watch the surveillance videos."

142.    Jason Beasley said, "I'm sorry you were injured on that weight bench; the bench repaired/weld seam failed," but I will contact our risk management department and report this

63

incident. You can use our $10,000 Med Pay insurance for injured members." No one from the
YMCA of Birmingham call or contacted me on Wednesday, June 22, 2016, or sent me any
emergency medical contact information (hospital, physician, insurer, etc.) for my injuries.

143.    Jason Beasley said, "I will contact the YMCA's Risk Management person, and
her name is Kristine Williams, and she will call you about our $10,000.00 med pay policy,"
when he called me on Tuesday, Tuesday, June 21, 2016.

144.    On June 22, 2016, the YMCA of Birmingham Pelham branch had Emily Lemus
create an incident report, dated 6/22/2016, my address and cell phone number that I gave to
Cameron Good, no outdated insurance information, no wife name next to Parent/Guardian, no
address (same as above), 12:00 [x]pm, no age, no time, and it said under GENERAL
DESCRIPTION  "Willie was doing Shoulder Press & the bench broke", no MEDICAL
INFORMATION, no WITNESSES, it stated – report Emily Lemus, no other names, no follow-
up.

145.    Someone altered the incident report more with more conflicting lies, "INCIDENT
DATE: 12:00 pm, on Jason Beasley sworn affidavit, Emily Lemus clocked in time is 12:03 pm,"
"MEDICAL INFORMATION: (She) scratched out, He said he would follow up because at the
moment he felt like he didn't hurt himself because he was in shock," "FOLLOW-UP: He said he
was hurting a little but declined further assistance," no contact with Erin Brown on Saturday,
June 18, 2016  2016 or after Saturday, June 18, 2016  2016."

146.    I went to see my internal medicine doctor, Dr. Odi. MD, on Thursday, June 23,
2016 with my slow shuffling gait, and I was complaining of total body pain. Dr. Odi prescribed

Zorvolex, Cyclobenzaprine, Amrix, Prednisone, ordered X-Rays of L & R shoulders, X-Rays of

Cervical, Thoracic, and Lumbar Spine, MRI L Spine, and other assessments.

147.    My wife called me multiple times on Thursday, June 23, 2016 to make sure I

made it to my doctor's appointment safely, and she wanted to meet for lunch after my doctor's

appointment.

148.    On Thursday, Thursday, June 23, 2016, YMCA of Birmingham Risk

Management Kristine Williams called me from (205) 801-7208, and Kristine Williams recorded

a voice massage on my cell phone, how I remember Kristine Williams said, "Mr. Jackson, my

name is Kristine Williams, and I work in the risk management department at the YMCA of

Birmingham. I am so sorry you were injured. This incident was just reported to me, please give

me a call at (205) 801-7208 or call my cell at (205) 482-4550, call me as soon as possible. I

would like to apologize again, and I will continue to attempt to reach you to open an injury claim

with our insurer."

149.    I called Kristine Williams cell phone and recorded a voice message, and she

called me back at 1:36 pm, and she apologize for not responding sooner. Kristine Williams said,

"Mr. Jackson, my name is Kristine Williams, and I am glad we are no longer playing phone

tag......" Kristine Williams said, "I just found out about this incident. I am so sorry you were

hurt. That weight bench should not have been on the fitness floor. This was our fault, and our

insurer the Redwoods Group will take care of you.

150.    Kristine Williams asked, "You were injuries at our Pelham Branch, and I had no

information about this incident. She asked questions about my condition, my doctor's

appointment, and she assured me the YMCA of Birmingham assumed fault for incident.

151.    Kristine Williams said, "I am opening an incident claim for you with our insurer the Redwoods Group – A Crum & Forster for any injuries sustained, and our insurer will take care of you. Kristine Williams said, "I open/filed your claim with the Redwoods Group – A Crum & Forster and an agent/name will contact you after our phone call.

152.    My call with Kristine Williams lasted over ten (10) minutes, and she never lied to me, because a person contacted me less than thirty (30) minutes after our phone call. YMCA of Birmingham Risk Management Kristine Williams, YMCA of Birmingham Pelham Branch Membership Director Jeremy Mead, YMCA of Birmingham Pelham Branch Executive Director Jason Beasley most likely informed YMCA of Birmingham President and CEO Stan Law and YMCA of Birmingham COO Lane Vines about the Saturday, June 18, 2016 incident possibly at the different times.

153.    The Redwoods Group – A Crum & Forster Company, Beth Cooper, AIC AINS, phone number (919) 469-7331 called my cell phone at 2:17 pm, on Thursday, Thursday, June 23, 2016, five days after I was critically injured by a welded/repaired adjustable inclined weight bench.

154.    The Redwoods Group – A Crum & Forster Company, Beth Cooper, AIC AINS said, "I cannot believe this weight bench was on the fitness floor," and she apologized to me and repeated what Kristine Williams said.

155.    I said, "I need to more doctors and get total body MRIs, X-Rays, Cat Scans, because I am hurting all over my body, head to toe," to the YMCA of Birmingham insurance company the Redwoods Group – A Crum & Forster Company insurance adjuster Beth Cooper, AIC AINS, on the phone and I gave her my email address (willjacksonjr4md@gmail.com).

156.    I talked to Beth Cooper, AIC AINS of the Redwoods Group – A Crum & Forster for about ten (10) minutes on my cell phone, and I may have recorded the phone calls with Beth Cooper, AIC AINS and YMCA Risk Management Kristine Williams.

157.    On Friday, June 24, 2016 at 9:50 AM, the Redwoods Group – A Crum & Forster Company agent, Beth Cooper, AIC AINS (bcooper@redwoodsgroup.com), sent me an email stating, "Attached is the letter about the YMCA's policy we talked about yesterday." "This is my contact information. Please contact ….."

158.    I am not an employee of the YMCA, and I have never worked for the YMCA. I worked at Sports First in Mountain Brook, Alabama, prior to the Young Men's Christian Association ("YMCA") purchasing that company.

159.    I am injury victim, Med-Pay is for third-party administration of employee benefits from my understanding, so "the Redwoods Group – A Crum & Forster agents, Beth Cooper, AIC AINS and R. Scott Bricker, JD, Executive Claims Adjuster, and YMCA of Birmingham Executive Director Jason Beasley offering Med-Pay to me an offering of $10,000 seem like insurance fraud", and Serious Injury Law Group agent Gerald C. Brooks, ESQ., Wallace, Jordan, Ratliff and Brandt Law Firm agents Thomas A. McKnight, ESQ., James Britt Funderburk, ESQ., Roderick J. Evans, ESQ., seem like possible "perjury" "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA", and "fraud" or "aiding and abetting insurance fraud under color of the law."

160.    The Redwoods Group – A Crum & Forster Company, a third-party, Beth Cooper, AIC AINS hired Rosemary Cubbedge, CPCU company, Integrated Claim Solutions, Inc.s Solutions, Inc., Florida, fourth party, to investigate my Saturday, June 18, 2016 injury claim

against the YMCA of Birmingham, Rosemary Cubbedge, CPCU company, Integrated Claim Solutions, Inc... Integrated Claims Solutions, Inc. hired an insurance investigator from Gadsden, Alabama by the name of Greg Pontes.

161.    Rosemary Cubbedge, CPCU received an original copy of YMCA incident report dated 6/22/20016, previous statements, written statements by witnesses, electronically recorded statements, received a contemporaneous stenographic, mechanical, electrical - or other recording or a transcription of it – that recites substantially verbatim the person's oral statement.

162.    Insurance investigator Greg Pontes of Integrated Claim Solutions, Inc... Solutions Inc., Florida, a fourth party, called my cell phone and recorded a voice message stating his name, title/job, company hired by, and background case information, and he asked me to call him to discuss day and time to do a recorded phone call for the insurance company's investigation.

163.    On Tuesday, July 5, 2016, I sent the Redwoods Group – A Crum & Forster claims adjuster Beth Cooper, AIC AINS an "Injury Claims Demand Letter" to reject the YMCA of Birmingham – Pelham Branch $10,000 "Med Pay" offer for medical expenses my health care plan, and Plaintiff Willie Lee Jackson Jr., "Demanded over $100 million dollars.

164.    On Wednesday, July 6, 2016 or Thursday, July 7, 2016, my physician, Dr. Odi, ordered an MRI for some of the areas of my back that I was complaining about, and I requested a full body MRI, but I was told that my health insurance, Aetna, would not pay for it. Greg Pontes received an original copy of YMCA incident report dated 6/22/20016.

165.    Dr. Odi recommended PT (Physical Therapy), because I did not want back surgery or see Neurologist, but my back pain made me change my mind, but YMCA's insurer

68

refused to pay for my medical treatment, doctor's appointment, Physical Therapy, Pharmacy, etc. cost.

166.    On November 1, 2016 at 2:58 PM, Plaintiffs, Willie Lee Jackson Jr., email account willjacksonjr4md@gmail.com received an email from R. Scott Bricker, JD, Executive Casualty Adjuster, The Redwoods Group – A Crum & Forster Company, 2801 Slater Road, Suite 220, Morrisville, NC, Phone: (919) 462-9732, fax: (800) 478-6068, SBricker@redwoodsgroup.com stating, "I requested a Medpay payment to you….. That visit and charge would not appear to be related to your accident at the Birmingham YMCA. Also, the YMCA forwarded a copy of the security video you requested. I will have it mailed to you." I received a letter with United States Postage marked:0003214477 - NOV 01 2016, MAILED FROM ZIP CODE 27560, from THE REDWOODS GROUP, Commercial Specialty Insurance, 2801 Slater Road, Suite 220, Morrisville NC 27560, addressed to: Willie Jackson, 123 Warwick Circle, Alabaster, AL 35007, Claim No: DCC00614743, Insured: YMCA of Birmingham, stating, "Dear Mr. Jackson, Enclosed please find a copy of the security video you requested. Sincerely, R. Scott Bricker, Executive Casualty Adjuster, Insurance Program for YMCAs, video disk: Pelham Fitness, June 1, 2016. "The video was altered and did not contain surveillance video, and it possibly violated the law. I, plaintiffs, included the Redwoods Group – A Crum & Forster CEO Kevin Trapani, attached kevin.trapani@redwoodsgroup.com, in an email about R. Scott Bricker, JD, Executive Casualty Adjuster possible violation of insurance laws, "Bad Faith" negotiation, criminal/civil, fraudulent information(video) to my home, and more to YMCA CEOs, Presidents, & Insurance Company, where I miss spelled due diligence (duplicity) and write (right) in "Demand Letter", due to TBIs (Traumatic Brain Injuries), that in November 12,

69

2016 at 2:32 PM I said, "I will hopefully get to see a Neurologist after seeing my Primary Doctor this week, and all visits include a cost."

167.    Plaintiffs continued to send medical bills to the Redwoods, Group – A Crum & Forster by email and telephone calls/messages, and I continued to have my medical bills rejected by R. Scott Bricker, JD, Executive Claims Adjuster… I continued to report my injuries that needed test and doctor visit to Aetna ERISA self-funded Health plan and the Rawlings Company subrogation agent Alex Grams, and I kept getting rejected, even though Aetna/Rawlings had my May 2016 health records without injuries and without complaint of health trauma injuries. I recorded all phone calls with the Rawling Company Subrogation Agent Alex Grams, the Redwoods Group – A Crum & Forster R. Scott Bricker, JD, Executive Claims Adjuster, Glen Iris, ESQ, of Carr Allison law firm, Thomas A. McKnight, ESQ and Roderick J. Evans, ESQ. of Wallace, Jordan, Ratliff & Brandt, some recording, and letters, phone messages, and emails stored recorded conversations that should be submitted into evidence in **Federal Court in the Southern District of New York, due to COVID-19 poor vaccination rate in the South**.

168.    Plaintiffs continued to send emails and phone messages to the Redwoods Group – A Crum & Forster Company from November 2016 until late 2017. In my email account willjacksonjr4md@gmail.com, I received an email on Thursday, December 8, 2016 at 8:26 AM, seventeen (17) days before my eight (8) year old son's Christmas, from R. Scott Bricker, JD, Executive Casualty Adjuster, The Redwoods Group – A Crum & Forster Company, 2801 Slater Road, Suite 220, Morrisville, NC, Phone: (919) 462-9732, fax: (800) 478-6068, SBricker@redwoodsgroup.com, stating, "**The offer of $10,000 solely reflects your claim for general damages (pain/suffering) for the accident on Saturday, June 18, 2016 2016. It does**

not contemplate future medical expenses or claims by other family members. I am not asserting any argument of contributory negligence on your part…. If your health carriers decided to see reimbursement for any medical expenses paid on your behalf from this incident, they will send their subrogation material directly to us. The YMCA carriers a $1,000.000 per occurrence general liability policy.

169.     On December 8, 2016 at 10:25 AM, I sent an email To SBricker@redwoodsgroup.com, stating, "Mr. **Bricker, Thank You for your email. I must respectfully decline your $10,000 settlement offer…. You are disrespecting me, not sure why**," and I was overwhelmed with pain, medical dept, frustration with reporting insurance crimes with no responses, and financial hardship, so it was heartbreaking holiday season with more to come.

170.     In my email account willjacksonjr4md@gmail.com, on December 8, 2016 at 10:57 AM, I received an email from R. Scott Bricker, JD, Executive Casualty Adjuster, The Redwoods Group – A Crum & Forster Company, 2801 Slater Road, Suite 220, Morrisville, NC, Phone: (919) 462-9732, fax: (800) 478-6068, SBricker@redwoodsgroup.com, stating, "**Mr. Jackson, Thank you for your email. This will acknowledge that you have rejected my offer of $10,000 to resolve your injury claim.**"

171.     On December 8, 2016 at 12:32 PM, I received an email from R. Scott Bricker, JD, Executive Casualty Adjuster, The Redwoods Group – A Crum & Forster Company, 2801 Slater Road, Suite 220, Morrisville, NC, Phone: (919) 462-9732, fax: (800) 478-6068, SBricker@redwoodsgroup.com, stating, "**Mr. Jackson, Thank You. I will not be increasing my $10,000 offer at this time.**"

172.    I, Willie Jackson, met with attorney Gerald C. Brooks, ESQ. on May 17, 2017, and I gave him and two staff members (Ms. Rachel Nixon and Ms. Angela Allen) information about my life, June 1, 2015 incident, Saturday, June 18, 2016  2016 incident, photos, school history, job history, medical history, books O wrote, other future books/characters writings, artwork and more.

173.    During our meeting, Attorney Gerald C. Brooks, ESQ. said, "The Pelham YMCA is in Shelby County. If we file a lawsuit for your case, it will be in Shelby County, and jury verdicts in Shelby County are more conservative, smaller (compared to some other counties).

174.    I, Willie Jackson, said, "I don't care about the County, because I want people to see what happen to me on the surveillances video, and compare my health before accident to after accident.

175.    I told Attorney Gerald C. Brooks, ESQ. and others in the meeting about the June 1, 2015 incident involving me and two minors, my son and a friend's son, being threaten with arrest and kicked out of the YMCA of Birmingham Pelham Branch.

176.    I signed a RETAINER AGREEMENT with Serious Injury Law Group at the end of the meeting to file a lawsuit against the YMCA for my injuries. I wanted my complaint to include my wife and son for their losses for the two incident/accident.

177.    On May 30, 2017, I, Willie Jackson (willjacksonjr4md@gmail.com) sent attorney Gerald C. Brooks, ESQ. (Gerald@seriouslawyers.com) of Serious Injury Law Group an email stating, "I am emailing you about my June 8, 2016 Injury case information updates. Can I receive notice after you or your law group receives the video from Saturday, June 18, 2016  2016 & June 1, 2015 at Pelham YMCA? Can I get updates on any extra cost/fees outside the 33 1/3

agreement? You made it clear that no POA was needed during our meeting, but I wanted this in writing. I Revoke any Power of Attorney agreement. (POA Revocation, Durable Power of Attorney Revocation, Revocation of General Power of Attorney, Revocation of Special Power of Attorney, Durable Power of Attorney, Healthcare Power of Attorney). Best Regards, Willie Jackson."

178.    On August 4, 2017, Gerald C. Brooks, ESQ., Serious Injury Law Group, LLC finally filed a lawsuit for plaintiff Willie Jackson as an invitee, in JEFFERSON COUNTY, ALABAMA Civil Court, but it was so basic, compared to the complaint I saw in the clerk's office, and it did not mention my injuries or years of paying membership to the YMCA of Birmingham, and labeled me and my "Complaint" void of "Contract Clause of the Northwest Ordinance of 1787 and the "Contract Clause" in the United States Constitution, because I was never an "invitee" , I am an "Assignee", my wife is a "Assignee", and my son is an "Assignee" under contract with the Shelby County YMCA in Homewood ("Assignor") to the owner YMCA of the USA ("Obligor"), under the Northwest Ordinance "privileges" and "immunities" to contract, and under the "Contract Clause" in the United States Constitution.

179.    At all times relative to this Complaint, by Forensic accounting located documents showing on August 7, 2017 at 11:03 PM, Official USPTO (United States Patent and Trademark Office) U.S. Serial Number: 75121867; U.S. Registration Number: 2092282; U. S. Registration Date: August 26, 1997; Mark: MAGNUM; Owner: JOHNSON HEALTH TECH CO., LTD, …. Section 8 of the Trademark Act, 15 U.S.C, § 1058; Section 9 of the Trademark Act, 15 U.S.C. § 1059; ASSET PURCHASE AGREEMENT dated July 30, 2012 TRADEMARK, REEL: 006056 FRAME: 0163 - TRADEMARK, REEL: 006056 FRAME: 0168, show BUYER: JHTNA

(Johnson Health Tech North America, Inc.) MANUFACTURING, LLC, Jason Lo, CEO,

purchase from SELLER: NORTHLAND INDUSTRIES, INC. D/B/A MAGNUM FITNESS

SYSTEMS, Patrick Ellis, Pres., Shareholders: Patrick Ellis and Larry Nelson, selling ownership

and trade name, patent, serial numbers, and other documents to JHTNA (Johnson Health Tech

North America, Inc.) MANUFACTURING, LLC...

     180.    I gathered documents showing ownership registration renewal by JHTNA

(Johnson Health Tech North America, Inc.) MANUFACTURING, LLC filing REQUIREMENT

FOR MAINTAINING REGISTRATION documents with the USPTO (United States Patent and

Trademark Office) showing ownership of NORTHLAND INDUSTRIES, INC. D/B/A

MAGNUM FITNESS SYSTEMS, purchased in 2012.

     181.    On, Friday, September 15, 2017 at 11:49:08 AM, Thomas A. McKnight, Jr.,

ESQ., Attorney James Britt Funderburk, ESQ., with assistance from Attorney R. Scott Bricker,

JD, Executive Claims Adjuster. filed a "**MOTION FOR PRECTECTIVE ORDER**", and in

line one (1) stated, "1. The **Plaintiff's physical condition and his medical expenses are at

issue in this litigation.** In her complaint, the plaintiff has alleged to have sustained personal

injuries and incurred medical treatment and costs as a result of the alleged defendant's conduct,"

possibly violating Plaintiffs "Due Process" United States Constitutional Rights, Civil Rights, and

violation of the Northwest Ordinance of 1787.

     182.    On Thursday, September 1, 2016 at 3:06 PM, Attorney R. Scott Bricker, JD,

Executive Claims Adjuster, (Executive Casualty Adjuster), allege and assert, "Mr. Jackson, This

will confirm that we received a 26 page fax on Sunday evening (August 28th). The fax contains

medical records for Willie Jackson beginning in September 2014 and ending in June 2016;

Attorney R. Scott Bricker, JD acknowledge receipt of my, Willie Lee Jackson Jr.'s, 2014, 2015, and 2016 medical records on September 1, 2016 at 3:06 PM in 2016, and the Attorneys (Thomas A. McKnight, Jr., ESQ. and Attorney James Britt Funderburk, ESQ. shows possibly violating of Plaintiffs "Due Process" United States Constitutional Rights, Civil Rights, and violation of the Northwest Ordinance of 1787, possible fraud and other federal violations and crimes.

183.    Protective Orders violate federal HIPAA law against possible fraud. Defendant discovery submission (YMCA Docs 000424) from Wallace, Jordan, Ratliff & Brandt, **November 6, 2017 certified mail and regular mail letter from Patrick Ellis**, President, Northland Industries Inc. dba Magnum Fitness Systems, 2201 12th Avenue, South Milwaukee, WI 53172, pellis@magnumfitness.com, by Attorney Roderick J. Evans, ESQ., does not identify the insurer of Patrick Ellis, President, Northland Industries Inc. dba Magnum Fitness Systems for injury claim, no policy number, no claim number no contact with Plaintiffs before or after June 18, 2016.

184.    On Monday, November 6, 2017, ("YMCA Docs 000424"), from law firm Wallace, Jordan, Ratliff & Brandt agent Attorney Roderick J. Evans, ESQ. alleges and asserts a letter was received "**BY CERTIFIED MAIL AND REGULAR MAIL,** Patrick Ellis, President, Northland Industries Inc., dba Magnum Fitness Systems, 2201 12th Avenue, South Milwaukee, WI 53172, pellis@magnumfitness.com; Re Our Client: YMCA of Birmingham; Claimant: Willie Jackson; Our File: 011884-0027; To Whom It May Concern: ….."regarding an incident in which a Magnum varsity flat bench broke while in use at YMCA on 2610 Pelham Parkway, Pelham, Alabama 35214 on or about June 18, 2016."…. "…. Upon information and belief, the subject bench was manufactured by Magnum and appears to have failed at the weld point." Letter

containing false statements and fraud, possibly violating Plaintiffs "Substantive Due Process"

and "privileges" and "immunities" Under the Northwest Ordinance of 1787 and the United

States Constitution. Because on Monday, August 7, 2017, Owner of Magnum Fitness Systems

dba Northland Industries Ince., JOHNSON HEALTH TECHNOLOGY COMPANY, LTD., filed

Official USPTO (United States Patent and Trademark Office) "**NOTICE OF**

**REGISTRATION RENEWAL UNDER SECTION 8**", renewing trademark "**ASSET**

**PURCHASE AGREEMENT" (TRADEMARK, REEL: 006056 FRAME: 0163,** THIS

ASSET PURCHASE AGREEMENT (the "Agreement"), is made as of July 30, 2012, by and

among JHTNA Manufacturing, LLC, a Wisconsin limited liability company (the "Buyer"),

Northland Industries, Inc., d/b/a Magnum Fitness Systems, a Wisconsin Corporation (the

"Seller"), Patrick Ellis and Larry Nelson (each a "Shareholder" and collectively the

("Shareholders").

185.    On November 10, 2017 at 10:55 AM, Case #: 01-CV-2017-903269.00,

(DOCUMENT 28) Defendant's Response to Plaintiff's First Interrogatories and Request for

Production filed in JEFFERSON COUNTY, ALABAMA Clerk's Office does not include

Defendant's response, no signed CERTIFICATE OF AUTHENTICITY by Defendant's agent to

Attorney Gerald C. Brooks, ESQ. at Serious Injury Law, after attorney filed "Motion To

Withdraw" in March 2018, or to Plaintiffs, Willie Lee Jackson, Jr., et al., as "Pro Se".

186.    On Wednesday, December 6, 2017 letter to Gerald C. Brooks, ESQ., Defendant's

Response to Plaintiff's (Pro Se) Interrogatories and Request for Production was still outstanding,

possibly violating Plaintiffs United States Constitutional Rights, Civil Rights, and possibly a

76

violation of the Plaintiffs' "privileges" and "immunities" under the Northwest Ordinance of 1787.

187.    Defendant filed a motion on Wednesday, December 27, 2017 at 2:46 PM, titled "DEFENDANT YMCA OF BIRMINGHAM'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO DEFENDANT' SFIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION and other documents," may contain nonfactual information.

188.    On Thursday, December 28, 2017 at 4:10 PM Circuit Judge issued a ORDER stating, "The Motion to Compel filed by the Defendants in this matter is GRANTED. The Plaintiff shall respond to all outstanding Interrogatories and Requests for Production within fourteen (14) days. Done and ORDERED THIS 28TH day of December 2017, no Objection from Plaintiff's counsel, Gerald C. Brooks, ESQ., speed and actions possibly violating Plaintiffs "Due Process" United States Constitutional Rights, Civil Rights, and violation of the Northwest Ordinance of 1787.

189.    On Friday, December 29, 2017, a document from Wallace, Jordan, Ratliff & Brandt, Roderick J. Evans, ESQ. to Serious Injury Law Group, Gerald C. Brooks, ESQ., stating, "contact was received by our office from representative for Patrick Ellis of Northland Industries d/b/a Magnum Fitness Systems…. Mr. Ellis's insurer has hired Glenn Ireland of Carr Allison," possibly violating Plaintiffs "Due Process" United States Constitutional Rights, Civil Rights, and violation of the Northwest Ordinance of 1787.

190.    On Friday, January 5, 2018 I sent Ms. Angela Allen of Serious Injury Law Group a text stating, "I would also like you all to get statements from physicians in the community that I did clinical rotations under, hospital (Cooper Green/Mercy) were I worked from day 1 (one) to

day 801 (eight hundred and one) getting clinical rotations approved by the hospital administration, Birmingham City Council, Hospital Health Clinical Education Coordinator and 8 (eight) physicians in medical School core rotations. My contract from medical school. All of this information gives foundation to my lost (should have been loss but I have TBI-Traumatic Brain Injury symptoms) of income. My portfolio is diverse. I also own, write, and publish books (new kids stories with a characters that took 6 (six) years and 4 (four) different artist to develop. I'm a certified OR Tech, who receives call each month about traveling scrub-nurse jobs around the world, where I can earn $28k in 12 (twelve) week assignment.

191.    On Jan. 5, 2018, at 11:01 PM, I sent a message to Attorney Gerald C. Brooks, esq. stating, "…… Please call or text me, because I've seen a release form for my medical records, and my company's financial I will release personally (no need to sign a release). I would also like you all to get statements from physicians in the community that I did clinical rotations under, hospital…..").

192.    On Tuesday, January 23, 2018, Circuit Judge issued "SCHEDULING ORDER AND TRIAL SETTING: As a result of Status Conference, the following is ordered… Exhibit A – 1. (A)Itemizations of all damages claimed, showing the amount and, if applicable, the methodology used to compute all such damages.

193.    I assert that "Status Hearing" without my presence, because no attorney or other person has power of attorney over me in the civil case or any other case in Alabama possibly violating my rights, so the "Scheduling Order" should be Stricken or Voided.

194.    I was requested by Serious Injury Law Group agents and Attorney Gerald C. Brooks, ESQ. to come to their new office in Center Point, 9617 Parkway East, Birmingham, AL.

35215 to respond to defendant's "Motion to Compel", because it was "Court Ordered", so I arrived in the evening with my documents (evidence) for the office to scan as exhibits, and two females (Ms. Angela Allen and one older female-first time meeting), and they showed me case documents with an "Incident Report", Date changed from 6/22/2016 to 6/18/2016; General Information: Willie Jackson; 123 Warwick Circle Alabaster AL 35007; signed by Emily Lemus stating, "He was doing shoulder press on the bench and the bench broke", with fax stamped 6/22/2016 11:35:47 AM (GMT-4:00).

195.     In January 2018, the Serious Injury Law Group agent and Attorney Gerald C. Brooks, ESQ. said, "The Court has ordered both sides to mediation. I responded, "How are we mediating without evidence?"

196.     I continued to research cases at the JEFFERSON COUNTY, ALABAMA Courthouse Law library and Clerk's office, and I saw a lawsuit filed on January 4, 2018 by a Heather Reynolds, as parent and next friend of a minor child.

197.     On Wednesday, January 10, 2018, law firm Wallace, Jordan, Ratliff & Brandt. Attorney Roderick J. Evens, ESQ. sent email and regular mail to Gerald Brooks, ESQ., Serious Injury Law Group stating, "As we view this case to have a de minimus value."

198.     At all times relative to this Complaint, Attorney Gerald C. Brooks, Esq. issued, "Objection", and without consent I objected myself in court records.

199.     On Friday February 2, 2018 at 6:03 PM, Defendant YMCA of Birmingham, by way of counsels Roderick J. Evens, ESQ., Thomas A. McKnight, Jr., ESQ. of Wallace, Jordan, Ratliff & Brandt filed a "OBJECTION TO ISSUANCE OF NON-PARTY SUBPOENAS", stating in number two, "(2.) These subpoenas are improper as Defendant has already produced

79

the insurance policy pertaining to coverage on the accident that makes the basis of this lawsuit and has further produced all documents and media not otherwise privileged."

200.     On Monday February 12, 2018, Circuit Judge issued an "ORDER" (Document 71) and that would possibly deny me, as a plaintiff, "due process" IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA.

201.     On Monday February 12, 2018, Roderick J. Evans, ESQ. of Wallace, Jordan, Ratliff & Brandt sent letter, "Re: Objection to Issuance of Subpoenas to Defendant's Insurance Co.", to Gerald C. Brooks, ESQ. of Serious Injury Law Group containing false statements that would possibly deny me, as a plaintiff, "due process" IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA, I have never received or viewed most or all of these documents from February 2018 that Serious Injury Law Group submitted Court documents until December 2018 including, "On Monday, February 12, 2018 by email and regular mail from law firm Wallace, Jordan, Ratliff & Brandt, Attorney Roderick J. Evans, ESQ. sent letter stating, "Objection to Issuance of Subpoena to Defendant's Insurance Co." to Attorney Gerald C. Brooks, esq…

202.     On Feb. 13, 2018, at 8:45 AM, I sent a message to Attorney Gerald C. Brooks, esq. stating, "This is Mr. Jackson: How many pictures of the YMCA (Pelham Branch) weight room have your investigators, staff, or yourself taken since May 2017? What written motion did defendants file with the clerk office of the court that required me to submit medical and financial records? Time is not your friend in medicine or legal matters, evidence and arguments are. Please do not respond to this message without answers to the questions. Since I'm considered plaintiff("Ex parte") with your Law firm, my unanswered questions and court support are

communicated to the court, judge and defendants side by you. Whatever motion the defendants

filled with the clerk office of the court, I would like to communicate my concerns of legal and

civil rights violations with defendants supplying evidence to me prior to lawsuit. I will email and

text this letter to you. Best Regards, Willie Jackson."

203.     On Tuesday, February 13, 2018 at 8:48 AM, I sent an email to Attorney Gerald C.

Brooks, esq. of Serious Injury Law Firm and I said, "This is Mr. Jackson: How many pictures of

the YMCA(Pelham Branch) weight room have your investigators, staff or yourself taken since

May 2017? What written motion did the defendants file with the clerk office of the court that

required me to submit medical and financial records? ....

204.     On Friday, **February 16, 2018**, Attorney Gerald C. Brooks, esq. of Serious Injury

Law Firm sent me a response, **Attorney Gerald C. Brooks, esq. stated**, "**No pictures have

been taken at this time**. I am not sure what Motion you are referring to." ....

205.     On Tuesday, February 20, 2018 at 6:33 PM, I sent an email to Attorney Gerald C.

Brooks, ESQ. of Serious Injury Law Firm and I said, "Mr. Brooks, I was under the impression

that all plaintiff attorneys gathered evidence, photos, of accident scene, so we can know how

many camera angles are available for your client's case. How many cameras are inside the

YMCA Pelham Branch? How many of those cameras have viewing access of Mr. Jackson on

June 18, 2016 and other dates(June 2015). Each side is entitled to things(evidence) under our US

Constitution, unless Alabama adapts Jim Crow laws in minority physical injuries and lost wages,

other damages. My grandmother, mother and millions of other people of color had to accept, sit

down and shut up. You are my lawyer in court, not my voice in this case. I speak for my family

and me. .......These are not concerns, my rights have been violated. Now, I want to fight for the

other people, who allowed themselves to be treated less than 4/4 American. The U.S.

Constitution is my concern. I have the honor to be, your obedient servant! W. L. Jackson.

206.    On Tuesday, February 20, 2018 at 11:53:49 AM, I assert that a document was

submitted IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA   without my

notice or permission by "Attorney Gerald C. Brooks, ESQ., submitted "NOTICE OF

WITHDRAWAL TO SERVE SUBPOENAS ON NON-PARTY", Plaintiff hereby give notice

that they withdraw the notice of intent to issue the subpoenas to the following: TO: The

Redwoods Group, Attn: Scott Bricker, Executive Casualty Adjuster, 2801 Slater Road, Suite

220, Morrisville, NC 27560; Crum & Forster Insurance Brokers, Attn: CT Corporation System,

160 Mine Lake Ct., Suite 200, Raleigh, NC 27615, who are non – parties to this lawsuit, to

produce the documents or things at the time and place specified in said subpoenas,"" Attorney

Gerald C. Brooks, ESQ. did not have any "Power of Attorney" to submit this notice to restricts

my rights to discovery "due process."

207.    On Tuesday, February 20, 2018 at 6:33 PM, I sent an email/message to Attorney

Gerald C. Brooks, ESQ, stating, "I was under the impression that all plaintiffs attorneys gathered

evidence, photos of accident scene, so we can know how many camera angles are available for

your client's case…. Each side is entitled to things(evidence) under our US Constitution, unless

Alabama adopts Jim Crow laws in minority physical injuries and lost wages, other damages…."

208.    On Thursday, February 22, 2018 at 12:05 PM IN THE CIRCUIT COURT OF

JEFFERSON COUNTY, ALABAMA, Circuit Judge issued an "ORDER" that completely

violates my legal, civil and unalienable rights to "due process" of law and discovery. This order

asserts that I objected against myself. This must be Federally investigated by Congress. I am the

citizen, not the YMCA of Birmingham, the YMCA of the USA, the Redwoods Group – A Crum & Forster, Aetna Health Insurance, the Rawlings Company, or Fairfax Holdings Inc…

209.    On Friday, February 23, 2018 at 10:08:09 AM issued more documents in my name that contradicting documents Attorney Gerald C. Brooks, esq. issued earlier in the week.

210.    On Thursday, March 1, 2018 at 11:10 AM, I sent an email to Attorney Gerald C. Brooks, esq. I said, "Hello Mr. Brooks, I will be out of town parts of March and most of April, but I want to hear from you as soon as the evidence for my case is received. I will give you an address to fedex/ups overnight(bill me or I'll prepay) to me. I will call you office and give them this same information."

211.    In May 2018, Plaintiffs received discovery documents from Defendant, YMCA of Birmingham, Executive Director Jason Beasley dated May 30, 2018 without signature and notary certification. I received US Postal mail from Wallace, Jordan, Ratliff & Brandt Dana Lardent, Assistant to Attorney Roderick J. Evans, ESQ. stating, "Dear Mr. Jackson, When I sent out the requested discovery documents on May 31, 2018, I inadvertently sent you an unsigned copy of the YMCA's Response to Interrogatories. Please find enclosed a signed copy of the same…."

212.    I received a signed, notarized copy of YMCA's Response to Plaintiffs' Interrogatories by US Postal mail with possible perjury and subrogation of perjury. I was hurting, and I had been hit in the head with heavy dumbbells, but Emily Lemus was not at the YMCA Pelham Branch front desk, when I walked to the desk and report broken bench and my injuries, makes number three (3) false; Executive Director Jason Beasley viewed the video surveillance of the incident and incident area.

213.    I received US Postal mail and Via Electronic Transmission from Attorney Thomas A. McKnight, Jr., ESQ, date June 5, 2018, states, ""As per our conversation on June 4, 2018, my firm has provided you with the documents responsive to your discovery requests via email. That email attached documents in PDF format with our ShareFile software. The software merely requires you to create a log-in and you…"

214.    On his June 5, 2018 letter, phone call, and 1 to 484 pages hand delivered documents, US Postal mail documents, ShareFile, flash drive and email, some "Documents" from 484 pages defendant's submission included as "EXHIBITS" for "Witness Testimony" during multiple "Hearings" IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA, I received notice that Judge Elisabeth A, French changed June 7, 2018 Hearing time from 9:30 AM to 10:30 AM on June 4, 2018 at 2:43 PM.

215.    I received, by US Postal mail from Balch & Bingham LLP Law Firm, 1901 Sixth Avenue North, Suite 1500, P. O. Box 306 (35201), Birmingham, Alabama, 35203, from Attorney Joseph D, Leavens, ESQ., "AFFIDAVIT OF LUIS M. LOZADA", 6. Y-USA did not grant any authority to the YMCA of Birmingham or the Pelham branch of the YMCA of Birmingham to act on its behalf. Likewise, the YMCA of Birmingham, including the Pelham branch, did not grant any authority to Y-USA to act on its behalf."

216.    I assert "AFFIDAVIT OF LUIS M. LOZADA" is riddled with lies, untrue statements, and inadmissible hearsay that are not admissible in any "COURT" for citizens under "An "The Northwest Ordinance of 1787"."

217.    In a June 20, 2016 article for "Hispanic Executive" titled, "The YMCA: A Home to Thousands, featuring an IP (Intellectual Property) attorney, who had been serving for nineteen

(19) months as an intellectual property attorney, name Luis Lozada, Senior Legal Counsel, Marketing and IP, YMCA. In the article, IP Attorney Luis Lozada worked previously as a trademark and copyright attorney at Kelly Drye in New York City, so Luis Lozada, ESQ. knows (USTPO) U. S. Trademark and Patent Office Federal Laws of intellectual property, patent, copyright and trademark registration legal ownership.

218.     On Monday, August 6, 2018 at 3:00 PM "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA (DOCUMENT 379), Case No.- 01-CV-2017-903269.00, an "AFFIDAVIT OF JASON M. BEASLEY" was submitted as testimony. Jason M. Beasley asserts, "After having been duly sworn by the undersigned notary public, "the affiant, Jason M. Beasley, testified as follows": 1. …. "I have personal knowledge of the facts stated herin." 2. …. "I have held this position since January 2014 and have direct knowledge about the staffing, maintenance, facility management, and normal business operations for the Pelham YMCA." 3. "Since I became the Executive Director, the subject weight bench of this litigation and all similar weight benches at that the Pelham facility have suffered no mechanical failures, such as this." 4. "The Pelham YMCA staff clean all of the equipment at least once a day and perform visual inspections throughout the day. Before the incident, they were not aware of any problems with the subject bench, or more specifically, any cracking of its weld seams. The subject bench was in good working order and in service with no other complaints or issues until the time in which the incident occurred.

219.     On Wednesday, September 5, 2018 at 1:53 pm, I emailed "Jennifer Onofry - jonofry@veritext.com and/or scheduling@freedomreporting.com - Freedom Reporting, a Veritext Company" inquiring about the cost "……to order a copy of the court reporter's

recording from August 30, 2018, 1:00pm Hearings, Willie Jackson, et al. v. YMCA, et al. from Jefferson County, Alabama, Civil Circuit, Judge French, room 610….."

220.    My wife, Julia, was present at the August 30, 2018 Hearing, and a Jefferson County Sheriff, (Who I asked, why are you here?), was outside the CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA, Room 610.m I have been falsely accused of practicing law in Alabama without a license. I represented myself ("Pro Se") in "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA", and "all my statements in Court are authenticated", because "I have first had knowledge of the events alleged in my "Complaint"; "I am not a lawyer, not practicing law, not representing others, and not a foreigner", but I am an American citizen covered by "the Northwest Ordinance of 1787" and "my substantive due process rights under the United States of America Constitution" both were "violated". "If my case is not referred to Federal Court in California, New York, or Washington DC, then I need the Federal Government and/or the United States Congress to take my case away from the State of Alabama, "stripe the State of Alabama of any immunity or State's rights", "define citizenship" ("rights and immunities under the Northwest Ordinance of 1787"), which it failed to do in "Dred Scott v. Sandford, 60 U.S. (19 How.) 393 (1857)."

221.    On Monday, September 10, 2018 at 2:14 at 3:27 PM "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA (DOCUMENT 436)", Circuit Judge issued an "ORDER" asserting, "Willie L. Jackson, Sr. appeared Pro Se." This "Error" asserts that a dead man, Willie L. Jackson, Sr., appeared before the Court. I am Willie L. Jackson, Jr. ("Willie Jackson"), as listed my "Complaint" in Jefferson County, Alabama Courthouse, and my wife, J. Jackson, appeared "Pro Se" at the "August 30, 2018 Hearing".

222.     On Wednesday, September 14, 2018 at 11:16 AM "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA (DOCUMENT 439)", "Defendant YMCA of Birmingham filed "NOTICE OF COMPLIANCE AND SERVICE OF DISCOVERYMATERIAL" by way of counsel Attorney Roderick J. Evans, esq. and Attorney Thomas A. McKnight, Jr., esq. of Wallace, Jordan, Ratliff & Brandt.

223.     On Monday, September 17, 2018 at 11:48 AM, IN THE CIRCUIT COURT OF JEFFERSON COUNTY ALABAMA, Wallace, Jordan, Ratliff & Brandt Law Firm agent Attorney Thomas A. McKnight, Jr., ESQ. submitted, "DEFENDANT YMCA OF BIRMINGHAM'S MOTION TO STRIKE PLAINTIFFS' SEPTEMBER 17, 2018 EVIDENTIARY SUBMISSION", Attorney Thomas A. McKnight, Jr., esq. asserts and alleges, "4. As explained at the summary judgement hearing, Plaintiffs misunderstand the facts on causation. A metal weld on the steel support beam failed during this incident. It was the original manufacturer's weld. There was never a repair commissioned by the YMCA to re-weld this bench. "**Jason Beasley's affidavit**", submitted as **Exhibit D to Defendant's Summary Judgement Motion makes the clear**:" "Since I became the Executive Director, **the subject weight bench of this litigation** and all similar weight benches at that the Pelham facility have **suffered no mechanical failures, such as this.** The Pelham YMCA staff clean all of the equipment at least once a day and perform visual inspections throughout the day. **Before the incident, they were not aware of any problems with the subject bench, or more specifically, any cracking of its weld seams. The subject bench was in good working order and in service with no other complaints or issues until the time in which the incident occurred.**" Attorney Thomas A. McKnight, Jr. further asserts and alleges, "(emphasis added). This is the

87

only Rule 56(e) evidence before the Court on this issue of any alleged prior repairs. Plaintiffs

have presented zero evidence in the form of sworn affidavit or deposition testimony to support

the wild speculation that this bench was somehow previously broken and re-welded by a

YMCA-hired contractor. All references to such unsubstantiated speculation should be stricken.

For example, Plaintiffs' states on page two of the Memorandum: "Some individual or group took

a weight bench and had it welded. The individual or group brought the welded weight bench

back inside the YMCA of Birmingham-Pelham for customer and guest usage before June 18,

2018. Mr. Jackson used the welded (repaired) weight bench..." There is absolutely no admissible

evidence to support these allegations by Plaintiff. They are due to be stricken from the record."

Attorney Thomas A. McKnight, Jr., ESQ. further asserts and alleges, "5. As set forth in

Defendant's August 29, 2018 Motion to Strike, the exhibits to the purported Affidavit are (again)

not authenticated and are due to be stricken. Furthermore, Plaintiffs include photographs from a

Sidney, Ohio YMCA used equipment sale. Any documents relating to a YMCA located in Ohio

selling its used exercise equipment is irrelevant and is due to be stricken as well.

224.    On Thursday, September 20, 2018, I received a letter, "VIA EMAIL – Wire

Transmission" from Attorney Roderick J. Evans, ESQ., "cc" (Carbon Copy) Attorney Thomas

A. McKnight, Jr. ESQ., and Civil Case: 01-CV-2017-903269.00, Attorney James Britt

Funderburk, ESQ., all listed on record as agents of Wallace, Jordan, Ratliff & Brandt Law Firm,

stating, "Good morning Mr. Jackson: (one) 1) As to your 1:17 a.m. request, you state; ......

**"Response:" Defendant has already produced the written and recorded statement of**

**Plaintiff and the video surveillance from the date of the incident.; "Response:" ... "The**

**recorded conversation with you and Greg Pontes was produced by agreement with your**

**previous counsel Gerald Brooks and Redwoods consent. This was sent to you on July 17, 2018 via USPS and received by you on July 18, 2018.; As a final courtesy, we are attaching a link for you to access the audio recording that was responsive to the Redwoods Subpoena. As you are aware, there is no charge to access the link, no software to download, and no reason why you cannot hear the upload recording.** (two) 2) ….. **Defendant YMCA OF BIRMINGHAM, through legal counsel submitted answers to PLAINTIFFS' FIRST, SECOND, and THIRD REQUEST FOR PRODUCTION.**…. "**Response:**" This request appears duplicative to your 1:17 a.m. request, and Defendant YMCA of Birmingham has already produced all information known at this time. There is no record of a conversation with a "Mr. Jeremy Mead" or any other correspondence found when searching for any additional information regarding the 2016 incident."

225.    On Thursday, September 20, 2018 at 4:21 PM, I received an email, (cc- Carbon Copy) Attorney Roderick J. Evans, ESQ., Dana Lardent, Julia Tolbert-Jackson, Attorney Joseph D. Leavens, ESQ.), from Wallace, Jordan, Ratliff & Brandt Law Firm agent, Attorney Thomas A. McKnight, Jr., ESQ. asserting, "Mr. Jackson – The discovery deadline has passed. **Discovery is concluded. We supplemented certain interrogatories because the Court ordered us to do so**. Engaging in discovery of additional matters is now foreclosed."

226.    On Monday, December 17, 2018, I received a letter, "VIA CERTIFIED MAIL", by US Postal Mail from Attorney Gerald C. Brooks, ESQ. of Serious Injury Law Group Law Firm stating, "Dear Mr. Jackson: Pursuant to my email sent to you today, please see enclosed, one (1) CD which contains a copy of my file related to the above-referenced case, thank you." This CD included some new documents, but the CD omits the "Original Incident Report" that I

saw at Serious Injury Law Group in January 2018, Greg Pontes investigation videos, statements, electronic recordings, photos, drawings, manuals, and phone records (identification of people, places, & things), etc....

## X. Violation of the United States of America (IRS) Internal Revenue Service

### Charitable Trusts IRM 7.26.15, IRC Section 4947 Trusts, Sections 4947(a)(1) and 4947(a)(2)

227.    Plaintiffs alleges the National Council of Young Men's Christian Associations of the United States of America d/b/a YMCA of the USA is a non-profit corporation principal headquarters as citizen of Chicago, Illinois and the National Council of Young Men's Christian Associations of the United States of America d/b/a YMCA of the USA is a for-profit corporation principal headquarters as citizen of Tallahassee, Florida,

### (Plaintiffs' Alleges Defendants' Collective Tortuous and Criminal Acts Too Large to Individually List with so many Pyramid Subsidiary Corporations)

228.    Defendants, the National Council of Young Men's Christian Associations of the United States of America Corporation (Domestic and Foreign), et al. for-profit and non-profit d/b/a YMCA of the USA, were at all times relevant to this Complaint a duly assigned owner of the YMCA trademarks and property ownership. Defendants' actions as alleged in this Complaint were taken under color of the laws of the United States of America and under color of laws of the States of Florida, Illinois, New York, North Carolina and Alabama, and under color of laws of multiple countries, including the United States, Geneva, Switzerland. Upon information and belief, Defendants YMCA of the USA is a resident of Florida, business address: 155 Office

Plaza Drive, Suite A, Tallahassee, Florida 32301. Defendants are sued in entity individual and official capacities.

229.    Defendants, the National Council of Young Men's Christian Associations of the United States of America Corporation (Domestic and Foreign), et al. for-profit and non-profit d/b/a YMCA of the USA, were at all times relevant to this Complaint a duly assigned owner of the YMCA trademarks and property ownership. Defendants' action as alleged in this Complaint were taken under color of the laws of the United States of America and under color of laws of the States of Florida, Illinois, New York, North Carolina and Alabama, and under color of laws of the multiple countries, including the United States territories, Geneva, Switzerland. Upon information and belief, Defendants YMCA of the USA is a resident of Florida, business address: 155 Office Plaza Drive, Suite A, Tallahassee, Florida 32301, and mailing address: 101 N Wacker Dr., Suite 1600, Chicago, IL., 60606. Defendants are sued in entity individual and official capacities.

230.    Defendants, the National Council of Young Men's Christian Associations of the United States of America (Domestic and Foreign), et al., Non-profit and non-profit d/b/a the YMCA of the USA, were at all times relevant to this Complaint a duly assigned owner of the YMCA trademarks and property ownership. Defendants' action as alleged in this Complaint were taken under color of the laws of the United States of America and under color of laws of the States of Florida, Illinois, New York, North Carolina and Alabama, and under color of laws of the multiple countries, including the United States territories, Geneva, Switzerland. Upon information and belief, Defendants' country Geneva, Switzerland. Upon information and belief,

91

Defendant YMCA of the USA is a resident of Illinois, business address: 101 N Wacker Dr.,

Suite 1600, Chicago, IL., 60606. Defendants are sued in entity individual and official capacities.

WHEREFORE, Plaintiffs requests that the Defendants submit response to Plaintiffs'

Statement of Facts to the Court prior to First Hearing.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court grant relief as follows:

a.  Plaintiffs seek Punitive Sanctions for paragraphs 1 to 230 for actions by each defendant
    separately.

b.  Plaintiffs request the Court enter a ruling for "punitive sanctions" against all defendants
    individually and collectively for tortuous actions from June 1, 2015 to March 2022 in
    state court to Obstruct Justice, Conspiracy to violate Civil Rights, Conspiracy to Obstruct
    Justice, Conspiracy to Defraud the United States, Conspiracy to commit wire fraud, mail
    fraud, honest service fraud, and insurance fraud, violation of FOIA Act, violation of
    Lanham Act of 1946, and Plaintiffs seek relief to "squash" and/or "dismiss" Defendants
    Pre-trial Motions."

c.  Declaratory Judgement Plaintiffs for records and documents research, over years, by
    researching at Birmingham Public Library Patent and Trademark Database, and hiring a
    Forensic Accounting agency for research, material, files, locate documents in different
    courts, etc.,

d.  A Compensatory damages and Punitive damages decided by Jury Trial for the "breach of
    contracts, breach of fiduciary duty, violation of federal and states statues" carried out by
    the relevant agents of YMCA of the USA non-profit, for-profit, domestic and foreign
    corporations d/b/a YMCA of Birmingham, et al., Fairfax Financial Holdings d/b/a Crum
    & Forster Holdings, LTD. d/b/a the Redwoods Group – A Crum & Forster Company, et
    al., Aetna (Inc.) ERISA Healthcare Plan, Defendants against Plaintiffs violated the
    constitutional rights of said Plaintiffs under the First and Fourteenth Amendments to the
    United States Constitution and under Article 1, Section 8 of the New York State
    Constitution;

e.  A declaratory judgment for Plaintiffs by Defendants actions and agents that the received
    "Disposal of Plaintiffs' Complaint w/ Prejudice by the Judge, irrelevant to the state and

federal laws and federal and state rules of civil procedure for filing complaint against 501 C 3 ("YMCA") with "Conflict of Interest and Abuse of Process in public locations, and the seizure of said YMCA surveillance video equipment, recording devices and photographs by Greg Pontes for Integrated Claims Solutions, Inc., violated the said Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under Article 1, Section 10 of the United States Constitution and Articles of the Alabama Constitution;

f.    A declaratory judgment that the violations by the Plaintiffs First, Fourth, Fifth, Seventh, Nineth, Tenth, and Fourteenth Amendment rights of the Plaintiffs were committed pursuant to a widespread violation of Alabama Rules of Civil Procedure and Federal Rules of civil Procedure policy, practice, and custom of the attorneys and court, of obstructing, interfering with, and retaliating against, the altering video and audio recordings of plaintiffs incident and phone call interview with Greg Pontes;

g.    Injunctive relief (i) enjoining the Defendants' agents and counsel, acting through the counsel, from interfering with, targeting, threatening, or using physical force against, members of the class and plaintiffs who are peacefully asserting Constitutional Rights public court to file complaints; and (ii) sanction the Circuit Court of Jefferson County, Alabama for not protecting the First Amendment rights of the plaintiffs to file complaint for damages, including compensatory and punitive jury awards in the court;

h.    An award to each Plaintiff of compensatory damages against each Defendants for damages suffered by each Plaintiff, in amounts to be determined at trial;

i.    An award to each of the Plaintiffs, individually and collectively of punitive damages against each defendant, individually and collectively, for negligence damages Defendants, in amounts to be determined at Trial by Jury;

j.    An award of America's Assistant United States Attorney (AUSA) for the Northern District of Alabama Attorneys' fees and litigation costs under 42 U.S.C. § 1988 and Civil Rights Division; and

k.    Such other relief that this Court may deem just, proper, and appropriate.

Dated: _March 25, 2022_                                      _Willie Lee Jackson Jr._

Willie Lee Jackson, Jr. (Pro Se)
123 Warwick Circle
Alabaster, Alabama 35007
Email: bw87ftAaol.com

Julia Tolbert-Jackson (Pro Se)
123 Warwick Circle
Alabaster, Alabama 35007
Email: jtjackson2@crimson.us.edu

**Guardian Ad Litem on Record for Minor Plaintiffs**
W. Christopher Weaver, Esq.
214 16th Street North
Bessemer, Alabama 35020

**Counsel on Record for Plaintiffs until
March 16, 2018:**
Serious Injury Law Group P.C.
Gerald C. Brooks, Esq.
P. O. Box 361256
 Birmingham, AL. 35236
Serious Injury Law Group
Attention: Gerald C Brooks, esq.
Attention: Chuck James, esq.
Attention: Rachel Nixon
Attention: Angela Allen
9617 Parkway East
Birmingham, AL 35215

Serious Injury Law Group
1 Chase Corporate Drive, Suite 400

Birmingham, Alabama 35244

**Defendants and Agents of Negotiable Instruments/**
**Counsel/s on Record in Jefferson County, Alabama,**
**Circuit Civil Case 01-CV-2017-903269.00**

Counsel for YMCA of the USA:
BALCH & BINGHAM LLP
1901 Sixth Avenue North Suite 1500
Birmingham, AL 35203-4642
Attention: David R. Boyd, Esq.
dboyd@balch.com
Attention: Joseph D. Leavens, Esq.
jleavens@balch.com

Counsel for YMCA of Birmingham:
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
800 Shades Creek Parkway, Ste. 400
Birmingham, Alabama 35209
Attention: Thomas A. McKnight, Jr., Esq.
tmcknight@wallacejordan.com
Attention: Roderick J. Evans, Esq.
revans@wallacejordan.com
Attention: J. Britton Funderburk, Esq.
jbrittf@wallacejordan.com
Attention: April S. Anderson
Attention: Dana Lardent
Attention: Johnny Foy

**Defendants:**
The National Council of Young Men's
Christian Associations of the
United States of America d/b/a the
YMCA of the USA
101 N Wacker Dr

Suite 1600
Chicago, IL, 60606
Attention: President/CEO Suzanne McCormick
Attention: President/CEO Kevin Washington
Attention: General Counsel Luis Lada, esq.
President Emeritus
Attention: SR. VP & CFO Nancy Lowens
Attention: Ex. SR. VP Angela F. Williams
Attention: COO Kate Markin
Attention: Ex. VP Kent D. Johnson
Attention: Ex. VP Robert Neal Denton
Attention: SR. VP Terri Radcliff
Attention: VP Jacqueline E. Gordon
Attention: HR Neil J. Nicoll
 Board of Directors
YMCA of Birmingham
2101 4th Avenue North
Birmingham, AL 35203
Attention: Jeremy Mead
Attention: Kristine Williams
Attention: Stan Law
Attention: Lane Vines
Attention: Jason M. Beasley

World Alliance of YMCAs (Pro Se)
(International) - Pro Se
12 Clos Belmont
1208 Geneva, Switzerland
President/CEO: Patricia Pelton
President/CEO: P
  The Redwoods Group – A
  Crum & Forster Company
  Attention: R. Scott Bricker
  Attention: Kevin Trapani
  Attention: Beth Cooper

Attention: Greg Pontes
2801 Slater Road
Suite 220
Morrisville, NC 27560

Integrated Claims Solutions
Attention: Rosemary Cubbedge, CPCU
Attention: Greg Pontes
668 Maitland Avenue
Altamonte Springs, FL 32701

## ADDED TO Federal Complaint Defendants
## and Negotiable Instruments:

The National Council of Young Men's
Christian Associations of the
United States of America Corporation
Foreign Non Profit d/b/a YMCA of the
USA
Address: 155 Office Plaza Drive
Suite A
Tallahassee, Florida 32301
Mailing address: 101 N Wacker Dr
Suite 1600
Chicago, IL, 60606

World Alliances of YMCAs
12 Clos Belmont
1208 Geneva, Switzerland

United States Fire Insurance Company
Company - Administrative Office
305 Madison Avenue
Morristown, New Jersey 07960
Attention: CEO Arleen Paladino

Crum & Forster Holdings
Corporation
305 Madison Avenue
Morristown, NJ 07960-6100
Attention: CEO/President Marc Adee

FAIRFAX FINANCIAL
HOLDINGS LIMITED,
95 Wellington St W
Suite 800
Toronto, ON, M5J 2N7 Canada
Attention: CEO/President PremWatsa

The Rawlings Company LLC
One Eden Parkway
LaGrange, Kentucky 40031-8100
Attention: CEO/President George Rawlings
Attention: Shannon Heitzman
Attention: Victoria Peek
Attention: Adrienne W. Kim, esq.
Attention: Alex Grams

Patrick Ellis and Larry Nelson
1600 Landmark Drive
Cottage Grove, Wisconsin 53527

Johnson Health Technology
North America d/b/a
JHTNA Manufacturing, LLC
Matrix Fitness USA
Northland Industries Inc.
Magnum Fitness Systems
1600 Landmark Drive
Cottage Grove, Wisconsin 53527